THE CITY OF PLATTEVILLE, Respondent, vs. BELL, Appellant.

*April 17 — May 15, 1886.*

*(1, 2) Justices' courts: Justice elected both in town and city: Holding office until successor qualifies: Form of warrant. (3-5) Forcible entry and unlawful detainer of building by contractor: Pleading: Question of title: Lien: Municipal corporations.*

1. A justice of the peace of a city was elected a justice of the town in which the city was situated, and was acting as such town justice when his term of office as city justice expired. *Held* that, under

sec. 15, art. VII, Const., he might continue to act as justice of the city until his successor was elected and qualified, although the city charter did not expressly so provide.

2. The fact that a warrant issued by such justice recited that he was "a justice of the peace in and for said county," and was signed by him simply as "justice of the peace," would not take away his jurisdiction of the case as a justice of the city.

3. Where the defendant in an action for forcible entry and unlawful detainer answers claiming to be rightfully in possession on the ground that, under a contract with the plaintiff, he has been erecting a building for the latter upon the premises, and that he has not been paid in full for his work, the question of title to the land does not and cannot arise.

4. Although one who contracted to erect a building for another on the land of the latter was in the peaceable occupancy of the premises for that purpose, yet if he asserts and maintains possession to the exclusion of the owner, he may be removed and fined, under sec. 3360, R. S.

5. A contractor to erect a building for a municipal corporation cannot have a lien thereon for his work or the material furnished, or hold possession until he is paid therefor.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice CASSODAY:

"Forcible entry and unlawful detainer. April 23, 1883, one Christopher Bell, father of the defendant, made a contract in writing with the plaintiff city to furnish all necessary material and build a city hall for the city on two lots described, in the city, upon a site to be selected by the city, and all according to plans and specifications in the manner described; that any alterations in the design of the building, or quality of materials, or kind or character of labor, should not vitiate the contract; but on due notice the workmen should, if necessary, be increased so as to fully complete the work and deliver the building up to the city in good order for use on or before December 1, 1883, except that if it should be necessary or desirable for Bell, on account of unfavorable weather or other reasonable cause, the inside plastering and finishing work necessarily and

properly following the same, not including the main assembly hall and clerk's office therein, might be deferred to a period not later than July 1, 1884, by which day the building was to be fully completed in all particulars according to the terms of the contract. Time was made the essence of the contract, and Bell was to forfeit and pay to the city, as liquidated damages, five dollars per day for every day the work remained unfinished and undelivered, which sum was to be deducted from any amount due and owing on the contract. In case of neglect or refusal to furnish material or do the work or complete the building in time, it was made lawful for the city, by the contract, after having given three days' notice, to employ others to complete the several unfinished parts, and the cost thereof to be deducted from what might be otherwise due on the contract. By the contract, Bell was to receive for such work, labor, and material, and the building fully completed, $20,000, adding to or deducting therefrom for extra work or deductions as therein provided; eighty per cent. of the *pro rata* value to be paid on monthly estimates of the architect, or from time to time as the work progressed; and the balance, or twenty per cent., when the building should be fully completed as per contract, and so certified by the architect.

"The defendant entered into partnership with his father, Christopher Bell, for the performance of the contract, and the firm entered upon such performance. In August, 1883, Christopher Bell died; and the defendant thereupon, as surviving partner, continued in the performance of the contract.

"The building was unfinished July 1, 1884. The city paid eighty per cent. of the estimates as made. Disputes arose as to the balance and as to extra work. Attempts were made at settlement in September, 1884, which failed. The city then sought to obtain possession of the building from

the defendant, but failed. November 26, 1884, the city gave the defendant written notice of its intention to build and construct certain uncompleted portions of the building.

"December 1, 1884, the city filed with D. J. Gardner, a justice of the peace in the said city, a complaint in writing, alleging its ownership and possession of the said lots on which the building was situated; the making of the contract, and its terms; the several facts stated; that the building was not completed according to the contract, but was so that it could be occupied and used for municipal purposes; that the city never parted with the exclusive possession; that the city had more than three days since demanded the possession; that the defendant had wrongfully taken the exclusive possession, and wrongfully, unlawfully, and forcibly held and detained the same from the plaintiff, and wrongfully wholly excluded the city, its officers and servants, therefrom; and prayed judgment removing the defendant therefrom. The said justice thereupon issued his warrant against the defendant for such wrongful, unlawful, and forcible detention, and the same was personally served on him December 2, 1884.

" On the return day the defendant demurred to the complaint for want of jurisdiction in the justice and other grounds. On the demurrer being overruled, the defendant answered, December 8, 1884, admitting that as surviving partner he had completed the building as far as completed; and claiming that he was rightfully and legally in such possession; that the city was owing him for the building and erection $5,400 over and above all proper deductions, and alleging that until the same was paid, or properly settled, agreed upon, and adjusted, he was entitled to hold and continue in such possession; and that he held the title to said city hall, and was rightfully and legally entitled to the possession thereof. The answer also denied

the jurisdiction of the justice to try or determine the action, and also a general denial except as admitted.

"At the same time the defendant filed with the justice a bond as upon plea of title. The justice declined to certify the cause, and thereupon the same was tried, resulting in a verdict for the plaintiff, upon which judgment of restitution was duly entered. From that judgment the defendant appealed to the circuit court, where the cause came on for trial, when the defendant moved to dismiss the cause for want of jurisdiction, which was denied. The cause was thereupon tried in the circuit court, and February 12, 1885, the jury, under the direction of the court, returned a verdict to the effect that the allegations of the complaint were true; that the defendant was guilty thereof; and that the city ought to have restitution of the premises therein described without delay; whereupon the court fined the defendant five cents. Thereupon judgment was entered accordingly, from which the defendant appeals."

For the appellant there were briefs signed by *Bushnell & Watkins* and *J. W. Murphy*, and oral argument by *Mr. Bushnell* and *Mr. A. W. Bell*. They contended, *inter alia*, there is no pretense that D. J. Gardner acted, or assumed or pretended to act, as a justice of the city. He could not hold both offices at the same time, as that would practically give the town only three justices instead of four as the law contemplates. *State ex rel. Knox v. Hadley*, 7 Wis. 706; R. S. sec. 845. If a resident and elector of the city he was not eligible to the office of justice of the town, and if a resident and elector of the town he was not eligible to the office of justice of the city. R. S. secs. 808, 3569, 4971, subd. 17; *Jones v. Kolb*, 56 Wis. 270.

For the respondent there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter*. To the point that no lien exists against a public building unless expressly given by statute, they cited *Williams v. Controllers*, 18 Pa. St. 275;

*Ripley v. Gage Co.* 3 Neb.˙397; *Board of Education v. Niedenburger,* 78 Ill. 58; *Abercrombie v. Ely,* 60 Mo. 23; *Thomas v. Trustees Ill. Indus. University,* 71 Ill. 310; *Thomas v. Urbana School Dist.* id. 283; *Hastings v. Woods,* 2 Mo. App. 148; *Leonard v. Brooklyn,* 71 N. Y. 498; *Poillon v. New York,* 47 id. 666; *Charnock v. District Township,* 51 Iowa, 70; *Loring v. Small,* 50 id. 271; *Lewis v. Chicasaw Co.* id. 234; *Bouton v. Sup'rs McDonough Co.* 84 Ill. 384; *Wilson v. Comm'rs Huntingdon Co.* 7 Watts & S. 197; *Quinn v. Allen,* 85 Ill. 39; *Patterson v. Penn. R. School,* 92 Pa. St. 229; *Whiting v. Story Co.* 54 Iowa, 81; *Board of Comm'rs v. O'Connor,* 86 Ind. 531; *Sup'rs Panola Co. v. Gillen,* 59 Miss. 198; *Wilkinson v. Hoffman,* 61 Wis. 637. Our statutes provide a different and special remedy in cases of buildings for muncipalities. R. S. sec. 3328. Even in cases where a lien on a building exists or may be had, in no case is the mechanic entitled to the possession. Houck on Liens, 287, sec. 172; *Pratt v. Tudor,* 14 Tex. 41.

CASSODAY, J. It is claimed that the justice had no jurisdiction. The premises in question were within the city. This being so, the statute required that the party complaining should procced by action before a justice of such city. Sec. 3362, R. S. It is claimed that Mr. Gardner was elected a justice of the peace by the town, and not by the city. He testified, in effect, that he was a justice of the peace of the town; that he was elected justice of the peace of the city in March, 1882; that his term as city justice commenced the first Monday of May, 1882, and expired the first Monday of May, 1884; that in March, 1884, one Harry Rountree was elected as his successor; that said Rountree told him he would not qualify, and never demanded the docket of him, and that it was still in his hands; that he supposed he held over till his successor qualified; that there was no city justice except him; that he resided and kept

his office in the city when this action was commenced; that he was town justice when he was elected city justice; and that he was then serving his second term as town justice, and that it would expire in May, 1885. This testimony was undisputed. The city charter provided that among the elective officers of said city should be one justice of the peace; that said justice of the peace should hold his office for the term of two years from and after the first Monday in May succeeding his election; that such justice of the peace should be chosen at the first election under the charter, and biennially thereafter; and that such justice of the peace should have the same jurisdiction and perform all the duties of a justice of the peace elected in towns, as provided by the general statutes. Sec. 4, subch. 1, and sec. 10, subch. 4, ch. 83, Laws of 1880. The charter nowhere said that such justice should hold his office until his successor was elected and qualified. But the constitution provides that "the electors of cities and villages, at their charter elections, shall, in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be for two years and until their successors in office shall be elected *and qualified.*" Sec. 15, art. VII. Under this provision it is plain that Justice Gardner had the right to hold his office of city justice not only until his successor in office should be elected, but also until he qualified. *State ex rel. Wood v. Goldstucker,* 40 Wis. 129.

The mere fact that the warrant recited that he was "a justice of the peace in and for said county," and was signed by him simply as "justice of the peace," without adding of the city, did not take away his jurisdiction to hear and determine the case. He was at least acting as justice of the peace for the city *de facto,* if not *de jure.*

2. There is no ground for claiming that the title to land was in issue. The making of the contract by Christopher Bell was admitted. He was admitted to be the city's "con-

tractor and builder." The defendant expressly claimed to be in possession "as surviving partner of" such contractor and builder. He had no standing in court except under the contract and as surviving partner of the original contractor. By making the contract, the contractor, and the defendant claiming under him, recognized, and by implication admitted, the city's right and title to the building contracted for, together with the lots upon which it was situated. He had no right there as owner of the building and lots, but only as such contractor. True, he owned such materials as were brought upon the premises, but as fast as such material became incorporated into the building it ceased to be his, and became a part of the realty. Under the pleadings the title was not and could not be in issue. *Newton v. Leary*, 64 Wis. 190.

3. It is claimed that the proceedings were unauthorized by sec. 3360, R. S. But, as already observed, the defendant never had any right to be in possession of the building at all except under the contract and as surviving partner of the contractor. That possession was never anything more than a qualified and subordinate possession. It was in no sense an exclusive possession. The moment he asserted and entered upon the *exclusive* possession he made an entry not given by law, and hence an unlawful entry. It then became a possession secured only by the exclusion of the owner. The mere fact that he was in the peaceable occupancy when he assumed such exclusive possession made his action none the less unlawful and wrongful. "No person shall make *any* entry into real property but in cases where entry is given by law." *Ibid.* No exclusive entry was ever given to the defendant by law. The defendant "having peaceably" but "unlawfully" entered upon the exclusive possession of the building, and "forcibly" held the same, was liable to "be removed therefrom, and fined in the manner provided in" ch. 145, R. S. *Ibid.*

4. It is claimed that a nonsuit should have been granted. This is on the theory that there was no evidence tending to show that the plaintiff was wrongfully or unlawfully excluded from the building. Without going into the evidence, we think it conclusively appears that the city was so excluded.

5. It is claimed that the court should not have directed a verdict for the plaintiff. This is on the ground that there was evidence tending to prove, in effect, the facts alleged in the answer, and that there was no forcible exclusion or detention. Undoubtedly the defendant in good faith believed that he had the right to hold the possession of the building until he received payment of what he claimed to be his due, or until the amount should be properly settled, agreed upon, and adjusted; and that he might waive his legal rights in that regard by voluntarily yielding possession. This was simply a misconception of his legal rights,— liable to occur to lawyers as well as others. The defendant had no right even to the ordinary mechanic's lien against the municipality. *Wilkinson v. Hoffman*, 61 Wis. 639.

Counsel for the defendant concedes " that the building was substantially completed August 25, 1884." Being substantially completed, the defendant had no lawful right to exclude the plaintiff, nor to forcibly retain the possession. That he did so unlawfully exclude and forcibly detain, we think conclusively appears from the undisputed evidence. This being so, there was no error in directing a verdict.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 28 N. W. Rep. 407.— REP.