PITTSBURG TESTING LABORATORY, LIMITED, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, imp., Respondent.

*December 11, 1900 — June 20, 1901.*

*Mechanics' liens: Subcontractors: Foreclosure: Quasi-public corporations: Electric railway and light companies: Public convenience: Property subject to lien.*

1. Under the general language of the mechanics' lien statutes, as applied to a railway or other *quasi*-public corporation, a lien may be enforced against such structures or property of the corporation as are not essential to the maintenance and operation of its road or plant for the public purposes for which it was established. *Carney v. L. C. & M. R. Co.* 15 Wis. 503, and *Purtell v. Chicago F. & B. Co.* 74 Wis. 132, criticised.

2. In an action to foreclose the lien of a subcontractor against the power house of an electric-light and street-railway company, furnishing light and power and operating a street railway for the public purposes for which it was established, it was admitted that the corporation was engaged in carrying out its purposes by means of its plant and appliances "other than the new power house" in question. *Held,* that plaintiff was entitled to such lien.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Hoyt & Olwell*, and oral argument by *F. M. Hoyt.*

For the respondent there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. H. Noyes.*

CASSODAY, C. J.    This is an appeal from an order sustaining a demurrer to the complaint to enforce a subcontractor's lien upon the premises described.    The complaint, after alleging that during the times therein mentioned the plaintiff was a corporation located at Pittsburg, Pennsylvania, and that the defendant the *Milwaukee Electric Railway & Light Company* was a corporation located at Milwaukee and organized to engage and engaged in the business of operating in the city of Milwaukee a system of street railways and an electric-light and power plant, and that the defendants Warren and John Roberts were copartners engaged in the business of civil engineers and contractors, alleges, in effect, that the electric company sells electric light and power produced at such plant, and has a contract with the city of Milwaukee for lighting certain streets therein, which contract was entered into December 15, 1895, and by its terms expires December 15, 1900; that the electric company is now engaged in carrying out and completing such contract by means of its plant and appliances "*other than the new power house hereinafter mentioned;*" that the electric company had, long prior to entering upon the construction of such new power house, constructed power houses in various parts of the city and placed therein proper engines, boilers, and machinery, and has ever since operated and used, and is now operating and using, the same for the purpose of producing electricity; that the last-named power houses and appliances therein contained are amply sufficient for the purpose of supplying

with electricity and operating the system of street railways and electric light and power plants of the electric company as they have been heretofore and now are constructed and carried on, and sufficient to enable it to carry out and fulfill its contract with the city until the expiration thereof; that the electric company is contemplating extensions and additions to its system of street railways and to its lighting and power plants; that to operate such systems and plants when so increased and extended as contemplated a new power house is necessary; that for the purpose of constructing such new power house the electric company, in 1898, caused plans and specifications to be prepared and made therefor by an architect of the city; that prior to February 6, 1899, Warren Roberts & Co. were employed by and entered into a contract with the electric company to perform work and labor and to furnish materials according to plans and specifications in and about the erection and construction of a brick building to be used as such new power house owned by the electric company, and situated on the land thereinafter specifically described; that in and by such contract it was provided that all the structural material used and employed in the construction of such building should be tested and inspected by this plaintiff at the expense of Warren Roberts & Co.; that prior to February 6, 1899, the plaintiff was employed as subcontractor by Warren Roberts & Co., under their contract with the electric company, to test and inspect such structural material; that as such subcontractor, under such employment, the plaintiff performed work and labor for Warren Roberts & Co. between February 6, 1899, and August 19, 1899,— that is to say, inspected and tested the structural material used and employed by Warren Roberts & Co. in the construction of such building under and pursuant to the provisions of the plans and specifications aforesaid; that the exhibits attached contain a true and correct statement of the work, tests, and inspections

thus performed by the plaintiff, showing the amount of work done and the prices therefor; that such prices were the prices agreed upon between the plaintiff and Warren Roberts & Co. for the doing of such work; that all of such work and labor was done and performed upon structural material which was sold and furnished to be used, and which was actually used, by Warren Roberts & Co., in the construction and erection of such new power house; that such new power house stands and is situated upon two lots therein described; that the electric company, at the time of making such contract with Warren Roberts & Co., was, and ever since has been, and now is, the owner of the land and of the new power-house building situated thereon; that the same does not exceed one acre in extent, and is within the limits of the city; that the last date of the performance of such labor of this plaintiff was August 19, 1899; that September 20, 1899, this plaintiff gave to the electric company the notice of its claim for a lien and statement thereof, of which true copies are thereto attached; that October 13, 1899, this plaintiff gave to the electric company the notice and statement of the work, tests, and inspections, of which true copies are thereto attached; that November 29, 1899, this plaintiff duly filed, as required by law, its claim for lien for the amount due and owing to it from Warren Roberts & Co. in the office of the clerk of the circuit court for Milwaukee county, a copy of which claim for lien is thereto attached; that such claims and all the allegations thereof are true, and are thereby made a part of this complaint; that one year has not elapsed between the doing of such work and labor and the commencement of this action; that there is now due and owing to the plaintiff from Warren Roberts & Co., by reason of such claim, $777.29, and interest thereon from August 19, 1899. Wherefore, the plaintiff demands judgment that the amount of its lien be ascertained and adjudged and enforced against such premises, with costs.

The question presented is whether the facts stated are sufficient to entitle the plaintiff to a subcontractor's lien upon the premises described, under the statutes of this state, for the work and labor performed. Secs. 1775, 1775a, 3314, 3315, Stats. 1898. The statutes declare, in general terms, in effect, that the party performing such work and labor shall have a lien upon such building and the interest of the owner thereof therein upon complying with the provisions of such statutes. Id. It is virtually conceded that the facts alleged would entitle the plaintiff to such lien if the premises were owned by a private party, and used for private purposes. But it is claimed, and the trial court manifestly held, that such statutes are not applicable to property of a *quasi*-public corporation engaged in operating a system of street railways and an electric-light and power plant in the city of Milwaukee. In support of such claim counsel rely upon certain decisions of this court; and counsel for the plaintiff rely upon certain other decisions of this court in support of its claim for a lien herein. We shall not here undertake to harmonize or reconcile all of such decisions; much less all that has been said in the different opinions in support of such decisions; but we will attempt to decide this case in accordance with the principles of law applicable to the facts stated.

The early case of *Hill v. L. C. & M. R. Co.* 11 Wis. 214, 221, was an action to enforce a mechanic's lien for building a part of a brick block, which, had it been completed according to the contract, would have extended "along the whole front of the block, upon the street," being 420 feet, and to the depth of fifty-five feet, and constituted the defendant's depot in Milwaukee. The "judgment was recovered by default, and was entered for a lien upon the interest of the company in the whole block 41." On the application of the company for a modification of the judgment, it was made to appear "that the railroad track was laid across the

east part of the block between the buildings and the river; that the whole block was not necessary or convenient for the use of the buildings erected, which were designed for stores and offices;" and thereupon the court modified the judgment "so as to confine the lien to the west sixty feet of the particular lots on which the building, as far as erected, actually stood." On the appeal by the plaintiff from such modified judgment, the same was reversed by this court, which held that the plaintiff was entitled to a lien upon one acre in the block; and that, as the block exceeded an acre, it was necessary for the court to determine to what portion of the block the lien extended; and so this court came to the conclusion " that the lien of the appellants was equivalent to a mortgage by the company of an acre in the block, and that it should be adjudged to cover the south one acre of the block, extending from the river to the street, and that it should be so sold as to leave what remained to the company in a compact form, extending also from the river to the street." The court reached that conclusion expressly because the premises were "at the very end of the road, and where from the very nature of the premises, it would be more convenient to both parties" that they should be so divided, in order that each party should " have access both to the river and the street." As the land was situated at the very end of the railway tracks, the lien could be thus enforced without destroying any of the corporate franchises of the company. The enforcement of the lien could at most only result in acquiring some of the property of the corporation not essential to the enjoyment of such corporate franchises. Upon that ground the decision may be sustained, although the reasoning of the opinion may not, in all respects, be approved. In fact, the learned justice who wrote the opinion, in a note to the case, states that some of such reasoning was inapplicable. The decision seems to have gone largely upon the ground of the superior equity.

Two years after that decision, a mechanic's lien in favor of a subcontractor was enforced by this court against the depot of a railroad company and a certain amount of land upon which it was situated, seemingly without reference to or consideration of the question whether the corporate franchises of the company were thereby destroyed or impaired. *Carney v. L. C. & M. R. Co.* 15 Wis. 503, 509. At the same term of the court it was held that a municipal corporation was not liable to garnishment in an attachment suit. *Burnham v. Fond du Lac*, 15 Wis. 193. That case was followed in *Buffham v. Racine*, 26 Wis. 449, and *Merrell v. Campbell*, 49 Wis. 535. Upon the principle involved in those cases, it was subsequently held by this court that the lien of a subcontractor, under the statute, did not extend to machinery furnished by him, and placed in a building constituting a part of the waterworks of a city. *Wilkinson v. Hoffman*, 61 Wis. 637. This was not put upon the ground that the general language of the statute (sec. 3314) was not broad enough to authorize such lien, but on the grounds of public policy, and because the objects of municipal government forbid that the clause of the statute referred to should be held applicable to machinery placed in a building constituting a part of the city waterworks; that it stood upon the same ground as where material is furnished for a county court house, jail, public school building, or other public building, which are held to be exempt from the operation of mechanic's lien laws; and that upon the grounds of public necessity and convenience it was held that the lien did not attach. That case has been repeatedly approved by this court. *Platteville v. Bell*, 66 Wis. 326; *Chapman V. Mfg. Co. v. Oconto W. Co.* 89 Wis. 264–271; *Strike v. Wis. O. F. M. L. Ins. Co.* 95 Wis. 586. A prominent author states that: " On the grounds of public policy, the mechanic's lien laws do not, in the absence of express provisions, apply to public buildings erected by states, counties, and towns for public use."

2 Jones, Liens (2d ed.), § 1375, citing many adjudications from numerous states. In support of the proposition, see *Leonard v. Brooklyn*, 71 N. Y. 498; *Parke Co. Comm'rs v. O'Connor*, 86 Ind. 531. The same rule is there stated as applying to school houses and waterworks so erected for public use. The "public policy" mentioned seems to be nothing more than an enforcement of the old common-law rule, as stated by SAVAGE, C. J., that: "When a statute is general, and any prerogative right, title, or interest would be divested or taken from the king, in such case he shall not be bound, unless the statute is made by express words to extend to him." *People v. Herkimer*, 4 Cow. 348. In an earlier case in the same state, it was said that:

"In a representative government, where the people do not and cannot legally act in a body, where their power is delegated to others, and of necessity must be exercised by them, if exercised at all, the reason for applying the maxim is equally cogent. . . . On the ground of expediency and public convenience, this was necessary. As an attribute of sovereignty, it was equally important to be preserved." *People v. Gilbert*, 18 Johns. 229.

The rule thus stated by Chief Justice SAVAGE was, at an early day, expressly sanctioned by the supreme court of the United States, and they added that:

"The doctrine that the government should not, unless named, be bound by an act of limitations, is in accordance with that just cited from Bacon, because, if bound, it would be barred of a right; and in all such cases is not to be construed to be embraced unless named, or, what would be equivalent, unless the language is such as to show clearly that such was the intent of the act. . . . The real ground is a great principle of public policy, which belongs alike to all governments, that the public interest should not be prejudiced by the negligence of public officers to whose care they are confided." *U. S. v. Knight*, 14 Pet. 315.

See, also, *Dollar S. Bank v. U. S.* 19 Wall. 239; *U. S. v. Herron*, 20 Wall. 263. As stated in one of these cases, the same principle has been decided in several of the states; and

all upon the same ground. In some of the cases it is held that the statutes of limitation do not run against the state unless expressly declared. *People v. Gilbert*, 18 Johns. 229; *Comm. v. Hutchinson*, 10 Pa. St. 466. In other cases the rule has been applied to the discharge of bankrupts or insolvents. In the administration of government the municipality is the agency of the state.

The question recurs whether the rule applicable to municipalities applies also to *quasi*-public corporations. Upon that question there seems to be a diversity of opinion. 2 Jones, Liens, §§ 1378, 1618, *et seq.* There can be no question in this state but that electric railway corporations, as well as other railway corporations, although constructed for the private emolument of those engaged in such enterprises, are highways, which have, nevertheless, been established under the authority of law, and primarily for the convenience and benefit of the public. They both have the right of eminent domain. Sec. 13, art. I, Const.; secs. 1845–1863*a*, Stats. 1898. Such being the relationship between the corporation and the public, the supreme court of the United States has held that:

"Ordinary lien laws giving to mechanics and laborers a lien on buildings, including the lot upon which they stand, or a lien upon a lot or farm or other property for work done thereon, or for materials furnished in the construction or repair of buildings, should not be interpreted as giving a lien upon the roadway, bridges, or other property of a railroad company that *may be essential in the operation and maintenance of its road for the public purposes* for which it was established." *Buncombe Co. Comm'rs v. Tommey*, 115 U. S. 122.

In that case Mr. Justice HARLAN, speaking for the whole court, said, in effect, that "a different construction of the statute would enable parties having liens" for small amounts "to destroy a public highway, and defeat the important objects which the state intended to subserve by its construction. No such intention should be imputed to the legislature

unless the words of the state clearly require it to be done."
Page 129.   Thus it has been held in Pennsylvania that "the
results to be produced to the public by public corporations"
for building bridges, turnpikes, railroads, and the like "can-
not be disturbed by the seizure by creditors of any part of
the property *essential to their active operations*."   *Foster v.
Fowler*, 60 Pa. St. 27.   Debts against such corporations must
be recovered in the ordinary way, so as to allow them to
progress with their undertaking, and accommodate the pub-
lic.   *Id.*   Such rules were applied in that case to a corporation
for introducing water into a town for the accommodation
of its inhabitants.   *Id.*   The principle involved in that case
was approved in a later case in the same court, "where a
mechanic's lien was sustained on the ground that the public
was not directly interested in the business of the defendant
corporation."   *Girard Point S. Co. v. Southwark F. Co.* 105
Pa. St. 248.   And, also, see *Guest v. Merion W. Co.* 142 Pa.
St. 610, 615; *Reynolds v. Reynolds L. Co.* 169 Pa. St. 626.
On the other hand, it has been held in the same state that:

"Lands purchased by a railroad company beyond what are
actually dedicated to corporate purposes are bound by the
lien of judgments against the corporation, and are liable to
be levied in execution, and sold by the sheriff, as are the
lands of any other debtor; but the purchaser at such sale
takes only that which is not necessary for the full enjoy-
ment and exercise of the corporate franchise, no matter how
acquired by the corporation."   *Plymouth R. Co. v. Colwell*,
39 Pa. St. 337.

And yet in the same case, WOODWARD, J., speaking for
the court, said:

"Though the corporation, in respect to its capital, is pri-
vate, yet it was created to accomplish objects in which the
public have a direct interest, and its authority to hold lands
was conferred that these objects might be worked out.   They
shall not be balked, therefore, by either the act of the com-
pany itself or of its creditors.   For the sake of the public,
whatever is essential to the corporate functions shall be re-
tained by the corporation."   Page 339.

See, also, *Oakland R. Co. v. Keenan*, 56 Pa. St. 203.  The rule of construction mentioned, and some of the adjudications cited in support of it, have repeatedly been sanctioned or recognized by this court. *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 560, 562; *S. C.* 17 L. R. A. 92, and note; *Fond du Lac W. Co. v. Fond du Lac*, 82 Wis. 322, 329; *Chapman Valve Mfg. Co. v. Oconto W. Co.* 89 Wis. 264; *Chicago, M. & St. P. R. Co. v. Milwaukee*, 89 Wis. 506; *State ex rel. Milwaukee St. R. Co. v. Anderson*, 90 Wis. 550; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29; *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80, 89; *State ex rel. Badger I. Co. v. Anderson*, 97 Wis. 114.   In a recent case Mr. Justice MAR-SHALL said:

" Much confusion often happens from a failure to distinguish between those franchises that are corporate in a strict legal sense and not really property of the corporation, and franchises acquired by a corporation after corporate existence commenced, that it may part with if they be assignable, or be deprived of without corporate existence being affected, and which may survive the death of the corporation." *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 446.

The rule to be deduced from the best-considered cases seems to be that a railway is an entirety, and that under the general language of a statute no lien attaches to a particular section or part of the road essential to its operation and maintenance for public purposes; but that, under the general language of such statutes, a lien may be enforced against such structures and property of the corporation as are not essential to the operation and maintenance of the railway for the public purposes for which it was established.   In addition to the authorities cited, see *National F. & P. Works v. Oconto W. Co.* 52 Fed. Rep. 43; *S. C.* 68 Fed. Rep. 1006; 2 Jones, Liens (2d ed.), §§ 1618, 1619; 3 Elliott, R. R. §§ 1066–1075.   In one of these sections Mr. Elliott says:

" The courts will not presume that the legislature intended to subject the public to the annoyances and inconveniences

which would necessarily attend the enforcement of a mechanic's lien against a railroad under a general mechanic's lien law, and will not so construe it, unless such an interpretation is clearly required." Id. § 1066.

The distinction between the cases where liens cannot be enforced against a particular structure or section of a railway, essential in its operation and maintenance for the public purposes for which it was established, and the cases where the lien may be enforced against a particular structure belonging to such corporation, but not so essential to its operation and maintenance, and hence which may be taken from the corporation without destroying or impairing its corporate franchises, has not always been observed in this court. The question is not whether the legislature may, in its wisdom, authorize the enforcement of such lien in any case, but whether the general language of our statute shall be so construed as to authorize a *pro tanto* destruction of the corporate functions created as an entirety, and primarily for the benefit of the public. In other words, courts are not authorized, in the construction of such general language, to repeal *pro tanto* the charter of a corporation so created primarily for the public benefit, especially in violation of a well established rule of construction of such general statutes so far as public rights are concerned. Such rule was not observed in *Carney v. L. C. & M. R. Co.* 15 Wis. 503, and the more recent case of *Purtell v. Chicago F. & B. Co.* 74 Wis. 132. In the case at bar it is admitted that the defendant was engaged in carrying out and completing its contract with the city by means of its plant and appliances "*other than the new power house*" in question. In other words, it is admitted that the new power house, against which the lien is sought to be enforced, was not essential to the operation and maintenance of the defendant's system of street railways, and an electric-light and power plant for the public purposes for which the defendant corporation was established. It follows

from what has been said that the plaintiff is entitled to such lien.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with directions to overrule the demurrer and for further proceedings according to law.

BARDEEN, J., took no part.