McGrath Construction Company, Respondent, vs. Waupaca-Green Bay Railway Company, Appellant.

*January 31—February 20, 1912.*

(1, 2) *Pleading: Liberal construction.* (2–6) *Railroads: Construction: Extra work: Conditions precedent to allowance of claims: Waiver: Substantial performance: Liens on railroad property.*

1. Upon a demurrer *ore tenus* the allegations of a complaint should be liberally construed.

2. In an action to recover for extra work under a contract for construction of a railroad, the complaint, alleging that plaintiff, pursuant to the terms of the contract, completed all of the work, and that estimates and certificates certifying full compliance with the contract were furnished the defendant by its engineer from time to time as the work progressed, is *held* sufficient upon a demurrer *ore tenus*, without further allegations of waiver of conditions precedent as to written orders and presentation of bills for extras at the end of each month.

3. Although the contract for the construction of a railroad provided that claims for extra work should not be allowed unless such work was done pursuant to a written order from the engineer in charge, yet where, for eight months prior to the performance of the extra work in question, plaintiff performed other extra work upon the oral order of the engineer, and the claims therefor were approved by him and paid by defendant with knowledge of the irregularity and without objection, the requirement of a written order will be held to have been waived as to the work in question.

4. So, also, although the contract provided that claims for extra work should be presented at the end of each month, a refusal of the engineer to receive claims for partial performance of certain extra work because the value thereof could not be computed until the completion of the road, justified a postponement of the presentation of the claims beyond the time specified.

5. Where itemized statements of plaintiff's claim for extra work were approved by the engineer upon certain conditions, and plaintiff thereafter fully performed such conditions except as to two small items, the amount of which was deducted from the claim, and the engineer certified that the work of construction had been completed pursuant to the contract and that he accepted and approved the work, these facts warranted a finding that plaintiff had substantially performed the contract and was entitled to recover on the claim for extras.

6. Sec. 3314, Stats. (1898), gives to those who perform labor or furnish materials in the construction of a railroad a lien therefor upon the railroad company's interest in the structures and the land upon which the improvement is situated, including its right of way, although used by the company in the operation of the railroad. Any suggestion in *Pittsburg T. Laboratory v. Milwaukee E. R. & L. Co.* 110 Wis. 633, in conflict herewith, is disapproved.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

On March 4, 1907, the plaintiff corporation and the defendant, a domestic railroad corporation, entered into a contract whereby the plaintiff undertook to construct for the defendant a railroad from Waupaca to Scandinavia. The work was completed on January 24, 1908. The specifications for the work provided for clearing the right of way, constructing the roadbed, including excavating and grading, erecting bridges, etc., laying the ties and rails, and ballasting and surfacing the track. Any changes or modifications were to be as directed by the chief engineer. The contract specifically provides:

"No claim for extra work shall be allowed unless such work shall have been done pursuant to a written order from the engineer in charge, and such claim shall have been made at the first estimate after such extra work was executed."

"It is also mutually agreed that when any work under this agreement for which no price is specified therein, shall be done by the contractor at the request of the chief engineer, then the contractor shall be entitled to a price to be fixed and determined by said chief engineer."

"The railway company is to pay the contractor eighty (80) per cent. of the amount of work done each month, according to the engineer's estimate, payment for same to be made on or before the tenth day of the month next succeeding.

"As soon as practicable after the first day of each and every month, and from and after the commencement of the work herein by the contractor, the said chief-engineer shall furnish to the railway company a certificate and estimate of the ap-

proximate amount and value of the various kinds of work done and material delivered in the work or on the railway company's grounds, from the commencement of the work up to the said first day of the month; and on or about the tenth day of the month next succeeding the railway company will pay to the contractor the total amount of said estimate less the amount theretofore paid to the contractor, on account of any previous estimate, less twenty (20) per cent. of said estimate, which last named percentage or sum the railway company shall retain until the full and final completion of the work contemplated to be done under this contract, in strict accordance with the terms thereof; and when the entire work hereinabove agreed by the contractor to be done shall have been entirely finished and completed to the satisfaction and acceptance of the said chief engineer, and he shall have furnished the railway company a certificate to that effect, and shall with said certificate also present his estimate of the amount and value of the various kinds of work done by the contractor under the terms of this agreement, which estimate shall be final and conclusive between the parties hereto, then the railway company will pay the sum or sums, if any, shown by said final estimate to be due to him under the terms of this agreement, together with the twenty (20) per cent. above referred to, and any and all percentages by it retained as aforesaid, and such payment shall be in full settlement for all work done by the contractor under the terms of this agreement."

The agreement provided that the track supplies and the ties should be delivered to the plaintiff by the defendant on flat cars. The evidence shows that part of these supplies and ties were delivered to the plaintiff by the defendant in box cars and part in gondola cars.

In January, 1908, after the work was concluded, the plaintiff filed with the chief engineer two statements for force or extra work, one a demand based on extra work in ballasting and filling low points on the road, and the other for extra work made necessary because the supplies and ties were partly delivered in box and gondola cars and for transporting some

of this material from Scandinavia to Amherst Junction at the chief engineer's direction. These two items are substantially all that is involved in the issues tried in the present case.

After the plaintiff's proposal that the differences between the parties should be submitted to arbitration as provided in the agreement had been rejected, the plaintiff filed its claim for a lien upon the railroad and its right of way, including the depot grounds of the defendant.

The referee to whom the matter was referred found in effect that the extras charged in these two claims had not been performed by the plaintiff pursuant to a written order from the engineer, but that the work had been done upon his verbal order; that other extras for which the plaintiff had been paid had not been furnished upon written orders, but that they had been furnished at the chief engineer's verbal direction; and that payment therefor had been made on monthly accounts upon the engineer's approval. The two bills for extras here presented were not presented at the end of the months when furnished, but were held back until the completion of the work to which they pertained upon the engineer's suggestion, and were then approved upon condition that the plaintiff perform and finish certain small items of work embraced in the agreement. These were afterwards performed by the plaintiff with the exception of some burning of brush and some bolting, which the referee found had not been done because of defendant's failure to furnish the bolts and because the engineer had ordered that the burning of brush be stopped. The referee reduced the amount claimed by the plaintiff by the amount of these two items by allowing the defendant the cost of performing the work not performed by the plaintiff, and reported on this basis in favor of the plaintiff. The report of the referee was approved by the court and judgment was entered in accordance therewith. This is an appeal from the judgment.

For the appellant there was a brief by *E. L. & E. E. Browne & Lloyd D. Smith,* and oral argument by *Mr. E. E. Browne* and *Mr. Smith.*

For the respondent there was a brief signed by *P. H. Martin,* of counsel, and *Merrill & Silverwood,* attorneys, and oral argument by *Mr. Martin* and *Mr. T. P. Silverwood.*

SIEBECKER, J.    The argument is made that the court erred in holding the complaint sufficient upon defendant's demurrer *ore tenus.*    The claim is made that it was fatally defective in omitting to allege any waiver of the conditions precedent as to written orders and as to the presentation of bills for extras at the end of each month, as required by the contract.    Upon such a demurrer the allegations of the complaint must be liberally construed.    It is alleged that the plaintiff, pursuant to the terms of the contract, completed all of the work, and that estimates and certificates, certifying full compliance with the contract, were furnished the defendant by its engineer from time to time as the work progressed. These allegations sufficiently embraced the claim of a detailed compliance with the conditions of the contract with respect to these claims, and hence the court did not err in overruling such demurrer.

As heretofore stated, the controversy under the pleadings in this case relates to the items embraced in the claims for furnishing extra ballasting, and for extra labor and expenses incurred in handling ties and other material furnished by the defendant in box and gondola cars instead of on flat cars as contemplated by the contract.    It is claimed that no recovery can be had for this material and the labor and expenses for the reasons that the chief engineer gave no written orders therefor, that the plaintiff omitted to present his claim therefor within the time prescribed by the contract, that the engineer filed no estimate and approval thereof with the defend-

ant, and that the evidence fails to establish what is due as the reasonable value thereof.

It is contended that the omission to obtain written orders for these extras from the engineer bars plaintiff's alleged right to recover for them. The referee found and the evidence shows that during each of the eight months prior to January, 1908, other extra work was performed by the plaintiff upon the verbal order of the engineer, that the plaintiff presented statements therefor to the engineer at the end of each month, that he approved them, and that the defendant with knowledge of these facts paid for such extras without making any objection on account of the omission of a written order for them. The plaintiff's representatives, in reliance on this practice and the waiver of the requirement by the defendant, proceeded to furnish these extras.

As to the omission to present the claims at the end of the month when furnished, it appears that these controverted claims covered and included material and labor furnished and performed in the three months immediately preceding the month of January, 1908, when the estimates therefor were presented to the defendant's engineer for approval. It is found, and the evidence supports the conclusion, that the statements and estimates for these extras were furnished as soon as practicable and as soon as the defendant's engineer would receive them. The evidence is to the effect that Mr. McGrath, who had control and was in actual charge of the construction work under this contract, was directed by the defendant's engineer not to present these claims until the work had been completed, because he was not enabled to pass on the items thereof until the work of constructing the road had been completed. It also appears that the engineer's course in so handling these claims was justified, because it appears that he was unable to ascertain the amount of the extra ballast, and the cost of doing the extra work in handling the

ties and other materials and the loss of time by the track crew on account thereof could not be ascertained until he had a statement of the full amount of ballasting furnished for the road and had obtained information from persons engaged in the handling of material and ties as to the time consumed in performing the labor. The evidence is sufficient to support the court's findings on these points and they cannot be disturbed on this appeal.

It is alleged in defendant's answer that after January 24, 1908, "the plaintiff duly requested defendant by its engineer and board of directors to accept said work under the terms of said contract," and that it refused to do so because the contract had not been completed according to its terms and conditions. It was found by the referee that the defendant's engineer had theretofore received itemized statements of the plaintiff's claim for these extras, had approved the same upon certain conditions, had delivered the same to the defendant's officers with this indorsement, and that the plaintiff thereafter and before February 12, 1908, had fully performed all of the conditions thereof except two small items which were completed by the defendant at a cost of $58. This was deducted by the referee from the plaintiff's claim. It also appears that the defendant's engineer did issue a certificate on January 27, 1908, certifying that the work of construction by the plaintiff had been completed pursuant to the contract and that he accepted and approved the work. These facts furnish ample ground to sustain the conclusion of the referee and the court that the plaintiff had substantially completed its contract and that it was entitled to recover upon its claims for extras. The approval of the various claims for extras for each of the eight months prior to January, 1908, without a written order therefor from the engineer in charge, justified the inference that the defendant waived this condition of the written contract; and the fact that defendant's engineer could not give an estimate on the items allowed in the two claims

here involved until the work was completed and refused to receive a claim for part performance thereof justified postponing a presentation of the claims beyond the end of each month during the period within which such work was actually done and the material furnished.

.The contention that the referee's finding to the effect that the engineer approved these claims for extras is against the clear preponderance of the evidence is not sustained. The evidence of the engineer is clear that the work was necessary, that he directed that it be done, and that he finally approved the items and amounts as embraced in the statements presented to him. This is corroborated by other evidence in the case. Under these circumstances we cannot reverse the court for thus approving the referee's finding.

We are persuaded that the amount allowed the plaintiff as extras and the amount deducted from the claim for two unimportant items of unfinished work and the amount of the defendant's payments on plaintiff's orders are correct, and that other counterclaims were properly disallowed.

It is contended that the court erred in awarding plaintiff a lien on the defendant's right of way and its buildings and lands used in the operation of a railroad, upon the ground that the statutes giving laborers and materialmen a lien for doing work and labor and furnishing material do not include a right to a lien upon the right of way, the buildings, and the lands used by a railroad company in the operation of its railroad. This claim is based upon the remarks in the opinion in *Pittsburg T. Laboratory v. Milwaukee E. R. & L. Co.* 110 Wis. 633, 86 N. W. 592, concerning the prior cases of *Carney v. La C. & M. R. Co.* 15 Wis. 503, and *Purtell v. Chicago F. & B. Co.* 74 Wis. 132, 42 N. W. 265. In the last of the foregoing cases it was held that the legislature had the constitutional power to enact laws for the enforcement of liens of materialmen and laborers upon the bridges and other structures of a railroad company and the public policy of the state

was to enforce such a lien, and that "the company operates its railway and uses its franchises subject to the obligation to pay the claim of the lienor as established by the judgment." It was there decided that this policy had been recognized theretofore by the adjudications of this court, therein referred to; and upon consideration they were adhered to and approved. In the *Pittsburg Case* (110 Wis. 633, 86 N. W. 592) the decision was that a subcontractor was entitled to such a lien upon a power house of a street railway company, which was carrying out its purposes "by means of its plant and appliances 'other than the new power house' in question." In the discussion of the lien statute it was there suggested, in quoting from Elliott's work on Railroads (§ 1066), that "the courts will not presume that the legislature intended to subject the public to the annoyances and inconveniences which would necessarily attend the enforcement of a mechanic's lien against a railroad under a general mechanic's lien law, and will not so construe it, unless such an interpretation is clearly required." The *Pittsburg Case* did not reverse the holding of the prior decisions of this court, that the lien law enacted by the legislature gave the right of lien to materialmen and laborers upon the property of railroad companies and that such a company "operates its railroad and uses its franchises subject to such obligation to pay the claim of the lienor." The provisions of sec. 3314, Stats. (1898), that when such a lien is asserted for constructing a "continuous roadbed, structure or plant designed or intended for use as, or as part of, a single thing," and that whenever the work shall be done on more than an acre in a city or village or on more than forty acres outside thereof, the right of the lien claimant shall not be limited to such an acre or forty acres, but shall extend "to the whole of said continuous roadbed, structure or plant and the whole . . . land on which the same is constructed or which is intended to be used or is used for the purpose of such roadbed, structure or plant; and the

claimant may make and file a single petition or claim for a lien on all the same," and file it in each county in which such roadbed, structure or plant is situated, in whole or in part, and, in case of foreclosure of such lien, the roadbed, structure, or plant "shall be sold as one continuous and single thing," are pertinent and persuasive that the legislature intended to grant a right of lien to materialmen and laborers on the roadbed, structures, or plant of a railroad company and its interest in the land used by it in the operation of its railroad as one continuous and single thing; and we must so hold. Any suggestion in the *Pittsburg Case* in conflict herewith is disapproved as not a correct construction of the statute creating such liens.

We are of the opinion and determine that the letter and spirit of the statute show a legislative intent to furnish protection to those who contribute their labor and material to the building of a railroad, by granting them a lien therefor on its interest in the structures and the land upon which the improvement is situated, including its right of way, though it is used by the railroad company in the operation of its railroad.

We find no reversible error in the record.

*By the Court.*—Judgment affirmed.