### OKLAHOMA CITY v. DERR.

No. 15238—Opinion Filed Feb. 24, 1925.

Rehearing Denied April 7, 1925.

**1. Municipal Corporations—Construction Contracts—Liability for Unexpected Expenses.**

The contractor in the performance of a municipal contract must bear the unexpected expenses arising from unforeseen difficulties incident to the performance of the work, but the contractor is not liable for the consequences of defects in the plans and specifications, prepared and furnished by the owner.

**2. Same—Construction of Municipal Contracts.**

The language used by municipal officers in a written contract, in relation to subject-matter, about which the municipality may contract, should receive the same construction and application as it would receive in a written contract between individuals. The same rules of interpretation and construction should be applied to municipal contracts, subject, however, to any existing statutory limitations, as are applied to contracts between individuals.

**3. Same—Action by Contractor for Price—Legality of Contract—Burden of Proof.**

The plaintiff in his action against a municipality makes out a prima facie cause of action when he proves performance of the contract, and that the debt is unpaid. Thereupon, the burden shifts to the municipality to show the illegality of the contract, if it be unlawful.

**4. Same—Recovery Sustained.**

Record examined; held, to support the judgment in favor of the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Chas. T. Derr against Oklahoma City, for debt upon contract. Judgment for plaintiff. Defendant brings error. Affirmed.

John F. Martin, Municipal Counsellor, and D. B. Welty and R. E. Wood, Asst. Municipal Counsellors, for plaintiff in error.

Harlan T. Deupree and Porter H. Morgan, for defendant in error.

Opinion by STEPHENSON, C. The municipality of Oklahoma City entered into a contract with Chas. T. Derr, in the year 1906, for the construction of a sewer system. It is claimed by the contractor that the city failed to pay him in accordance with his contracts. The plaintiff in due time commenced his action for the recovery of the indebtedness. The trial of the cause resulted in judgment in favor of the plaintiff. The defendant has appealed the cause to this court and assigns several of the proceedings had in the trial of the cause as error for reversal here. The main contentions of the defendant, are: First, that the total claims of the plaintiff for the construction of the sewer system exceeded the estimate; second, that the contract provided that changes in the contract must be made in writing in order to bind the city; third, that the changes and additional work for which recovery is sought in this case were not authorized by the city in writing.

There are several other errors assigned, but disposition of the foregoing questions may make their consideration unnecessary in this appeal.

The municipality, in the year 1906, voted its bond issue for about $225,000 to construct a certain sewer system. Plans, specifications, and estimate of the cost were prepared, filed, and approved by the city. The contract with the plaintiff appears to have been duly and regularly made. The original contracts of the plaintiff and other contractors were within the estimate and within the bond issue. Certain contingencies arose in the course of the work and other oral contracts were made between this plaintiff and the defendant, which, added to the original contracts, exceeded the estimate.

The position of the municipality is that the city is not liable for the contracts and items involved in this suit for the reason that the items plus the original contract price exceeded the estimate and bond issue. The circumstances and conditions which gave rise to the subsequent contracts and claims are: First, the city after it had prepared its plans and specifications, made a fill over a part of the line, which necessitated a greater depth for excavation than was shown by the plans. Second, the city decided after the preparation of the plans and the making of the contract, that it desired to change the location of the sewer line to another location. The new location necessitated extra excavation and removal of a considerable quantity of stone which was not estimated in the first instance. Third, the plaintiff in the course of the excavation of the ditch, at a depth of about 15 feet, severed a large water line with a steam shovel, that was not shown by the plans and specifications. The flow of water in the ditch impaired the walls and caused them to cave. The water line which afforded fire protection for the portion of the city located north of Main street was threatened by the caving walls. It became necessary to go to considerable work and expense to remedy the threatened break of the water main. Fourth, the plaintiff in the course of his work came in contact with another water line which was severed by the steam shovel in excavating the earth. The plans and specifications did not show the location of this particular water line. Fifth, the municipality in the course of the excavation of the ditch, in a certain portion of the city desired to change its course which entailed extra expense and work. Sixth, the remainder of the items involved in this appeal arose by reason of similar conditions.

The city placed its city engineer in charge of the supervision and direction of the work being done by the plaintiff. The city council had also appointed a sewer committee to act in connection with the city engineer in the supervision and direction of the work.

The plaintiff called the engineer and the sewer committee and members of the council to view each situation at the time it arose, and sought their directions in meeting

the unexpected problems. The proof shows that the plaintiff performed the work, which gave rise to the items involved in this appeal, under agreement made with the sewer committee and the engineer, with the knowledge of the members of the council. The work was completed and the system accepted by the city. No complaint is made by the city as to the manner of doing the work and its completion. There is no fraud alleged upon the part of the plaintiff or in conjunction with the officers of the municipality.

The changes in the plans and specifications and the additional contracts were not reduced to writing. The city contends that section 9 of the original contract denies the right of the plaintiff to recover for the several items involved in this action upon this ground. The section is in the following language:

"No change shall be made in said contract or the plans and specifications for any section of the work done under this contract without the written consent of the said city or its engineer."

It is clear that this provision was incorporated in the contract for the benefit of the city. It was sufficient to protect the city against any wrongful or fraudulent claims, which might be made by the plaintiff in the course of the construction of the work. It was the duty of the city to cause any changes in the plans and specifications to be reduced to writing, and served on the contractor. The observance of this practice upon the part of the city would have avoided any controversy as to its authority for any particular change or controversy as to the compensation to be allowed for the work, but we may add that this suit does not rest upon a dispute between the parties as to whether the city authorized or directed the changes, or entered into the new contracts.

It is a well established rule of law that provisions incorporated into a written contract for the benefit of one of the parties may be asserted or waived by the latter.

The municipal officers in making the contract and in directing the completion of the work were exercising powers delegated to them by the people of the city. The status of principal and agent existed between the people of the city and its officers in relation to this subject-matter. It may be that it would be for the best interest of municipalities, in many instances, if the agents and officers of the city would enforce that portion of the contract regarding changes in the plans and specifications requiring the same to be reduced to writing. But is it the duty of the contractor to urge and insist upon the officers performing the obligation they may owe to the principal? And should the contractor refuse to carry out his contract and undertake to hold the city liable for a breach, because the agents and officers did not discharge their obligations owing to the principal? We think the answer is in the negative, if the contractor is free from fraud and wrong in the premises. The agents and officers of the city are elected by the people and are answerable back to them for the faithful performance of their delegated official duties.

Should the court in dealing with questions growing out of the malperformance of duties by municipal officers, within their delegated powers, undertake to minimize the evils by applying a construction to municipal contracts different from that applied to contracts between individuals? We think a municipal contract should be construed according to the same rules as are applicable to like contracts between individuals, subject to any existing statutory limitations. If there be a question of malperformance of official duties within the delegated powers, let the agent answer back to the principal who is responsible for creating the particular agent in the first instance. It would be better in the latter instance to permit the agent to answer back to his principal on the clear cut issue, if it be made, rather than for the court to apply a different rule of construction, through a strained or technical construction of the contract. The court in the latter instance leaves those who would contract with municipalities in the field of uncertainty. The result is that the municipality will be denied the opportunity to interest the more efficient contractors in bidding for its work. The efficient municipal officer is then placed in a situation where he cannot give his best service to the principal. We do not imply by the foregoing that the municipal officers committed any wrongful acts in connection with the matters involved in this action.

The court's interpretation of the language used in municipal contracts and the construction should be the same as is applied to contracts between individuals. However, the construction of municipal contracts is subject to any existing statutory provisions.

We think the Court of Claims of New York, in the case of Atlanta Construction Co. v. State, 175 N. Y. S. 453. aptly expressed the rule of construction and reasons therefor in the following language:

"We are fully aware that these contracts are so drawn as to excuse the state from

almost any statement or representation which it may make in reference to matters similar to the one here involved; but we believe there should be a limit placed on this method of leading a contractor astray to his damage and loss. There is no reason why the English language, when used by officials of the state, should not have the same meaning and significance which is attached to it when used in contracts between individuals."

We think the rule expressed in the last sentence of the quotation is a rule that ought to be applied in the construction of municipal contracts, unless limited by some statutory provisions. However, this rule presupposes that the contractor was free from fraud.

The city gave its consent for the improvement and expressed its willingness to bear the expense for the construction by the vote on the bond issue. The defendant has now undertaken to defeat the payment based upon an omission of duty upon the part of its agents, which is free from fraud upon the part of the plaintiff.

We think the city should not be permitted to refuse payment alone on the ground that the changes in plans and specifications were not reduced to writing when it was the duty of the city to perform this work. This question was before the Supreme Court of Illinois, in the case of City v. Joslyn, 36 Ill. App. 301, 136 Ill. 525, 26 N. E. 1090. The court said in relation to the plea by the defendant:

"He is to make the order and must put it in writing and his omission to do his duty and comply with the contract cannot be invoked to aid the defendant, nor can the defendant omit to comply with its part of the requirements of that clause and at the same time insist upon a strict compliance with it on the part of the appellee. The neglect of the defendant to keep its part of that clause must be held to be a waiver of the right to insist on the plaintiff keeping his part of it."

The plans and specifications did not show the location of the water main which the plaintiff severed by the use of his steam shovel in excavating the ditch. A situation was created by the severance of the water main which threatened another water main which afforded fire protection for that part of the city lying north of Main street. The flooded ditch which had been excavated to a depth of about 15 feet threatened to cause the severance of the water main. It was necessary to take steps to stop the flow of water and protect the water main provided for fire protection for the north part of the

city. The accident meant extra work and expense to the plaintiff. The situation arose by reason of the failure of the city to show the location of this particular water main. It was necessary for the city to make provisions to meet the error giving rise to the dangerous situation. The city under its contract was authorized to give the direction in writing, and specify the manner of doing the work, or it might give the same instructions orally. The city elected to meet the situation by an instruction from its duly authorized agents.

In the case of City v. Smith (Va.) reported in 89 S. E. 123, the court said in part, in relation to similar questions:

"It appears that during the progress of the work the contractors when they discovered that additional excavation would be required in order to reach bedrock, which was absolutely essential to a safe structure, without delay notified the city engineer of the fact and asked him for instructions; * * * that the engineer directed, indeed, he could not have done otherwise—that the contractors should go to bedrock, which was accordingly done. * * * We think that was sufficient compliance with the contract."

The right of the municipality to waive the provisions of the contract in relation to reducing to writing the changes in the plans and specifications has been upheld by the following cases: Douglas v. Morrisville (Vt.) 95 Atl. 810; Bartlett v. Stanchfield 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625; Kilby Mfg. Co. v. Hinchman-Renton Fire Proofing Co., 132 Fed. 957, 66 C. C. A. 67; McGrath Cases, 148 Wis. 372, 134 N. W. 824; Schmulbach v. Caldwell, 196 Fed. 16, 115 C. C. A. 650; Meyer v. Berlandi, 53 Minn. 59, 54 N. W. 937; Campbell v. Kimball, 87 Neb. 309, 127 N. W. 142.

Our court has not heretofore made any distinction between the interpretation of municipal contracts and contracts between individuals, unless the statute had created some particular limitation in relation to the municipal contract under consideration. We know of no rule that would forbid a municipal corporation to waive the privilege reserved by it to reduce changes in the plans and specifications to writing, unless the action was prohibited by statute.

We now go to the question made by the defendant that additional items. plus the original contract price, exceeded the estimate. The defendant relies upon section 408. Rev. & Ann. Stat. of Okla. 1903, carried as section 4577, Comp. Stat. 1921, which reads in the following language:

"Before the city council shall make any

contract for buildings, bridges or sidewalks, or for any work on streets, or for any other work or improvements, an estimate of the cost thereof shall be made by the city engineer, and submitted to the council, and no contract shall be entered into for any work or improvement for a total price exceeding such estimate."

This section clearly means that the contract as let should not be in excess of the estimate made by the engineer for the particular work.

The purpose of this section is to confine all bids within a given sum of money for a particular piece of work. The municipal officers are not usually skilled in a construction project and its cost, while the contractor is. The purpose of the statute is to prevent imposition by a contractor. The municipal officers have the complete estimate before them, they may compare the cost of the proposed changes, or the cost of the new features with like estimates in the original contract. There is no great occasion for the municipal officers to be imposed upon in the latter instance. When the plaintiff severed the water main which in turn jeopardized the water mains which afforded fire protection to that part of the city north of Main street, was it the duty of all parties to refrain from repairing the damages, until an estimate of the work and changes could be prepared and formally approved by the council? Was it the duty of the contractor to take care of the situation at his cost at a great expense in order to keep the total cost within the original estimate, when it was the error of the city in failing to show the location of the water main? We think not in either instance. We think neither party to the contract cared to assume the responsibility for failure to act and meet the consequences from a fire on account of a failure of water protection.

Any question of fraud or excessive charges may be taken care of by the court, when raised by an interested party.

The answer to the defendant's contention that the items involved in this action, plus the original contract price exceeds the estimate in the first instance, is that the engineer did not make any estimate for the items in the first instance. The estimate in the first instance did not contemplate the conditions, which the contractor met in the course of the fulfillment of the original contract. The situations resulting by failure of the plans and specifications to anticipate the location of the water mains, and other conditions, created emergencies which were necessary to meet at once. The question is, Did the original contract exceed the estimate? It is admitted that the original contract was within the estimate. The point is not made that fraud entered into the action of the contractor in relation to the items involved in this suit. The contractor will not be relieved from the performance of a municipal contract because he meets a situation incidental to the performance of the contract that was not anticipated by him, although such unexpected situations may add extra expense in completing the work. U. S. v. Spearin, 248 U. S. 132.

The formation of the earth to be excavated may be different from that anticipated by the builder, and the contractor may find quick sand where he anticipated finding rock formation for the foundation of the structure to be built, but this does not change the rule. He must meet the performance of the contract at the cost he contracted for.

A different rule applies where the contractor must build and complete a structure according to the plans and specifications by the owner. The contractor will not be required to bear extra expense resulting from the performance of the contract on account of defects in the plans and specifications prepared and submitted by the owner. MacKnight-Flintic Stone Co. v. The Mayor, 160 N. Y. 72; Filbert v. Phil., 181 Pa. St. 530; Bentley v. State, 73 Wis. 416; Sundstron v. N. Y., 213 N. Y. 68; Christie v. U. S., 237 U. S. 234; Hollerbach v. U. S., 233 U. S. 165; U. S. v. Utah N. N. & C. Stage Co., 199 U. S. 414-424.

The question is not made that the sum total of the expenditure exceeded the bond issue and the levy made for the year 1906. It was sufficient for the plaintiff to prove the contract, the performance of the work, and the failure to pay the indebtedness. The burden then shifted to the defendant to prove the invalidity of the contract, if in fact it was unlawful. Fabric Fire Hose Co. v. Town of Caddo, 59 Okla. 89, 158 Pac. 350; Johnson v. Board, 7 Okla. 686, 56 Pac. 701; Board of County Commrs. v. DeLana, 8 Okla. 213, 57 Pac. 162; State Bank of Miami v. City of Miami, 43 Okla. 809, 144 Pac. 597.

The plaintiff in error must fail upon its main contention, consequently, it would serve no useful purpose to consider the other questions.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.