No. 31,367

The City of Cimarron, *Appellee*, v. Independence Indemnity Company, *Appellant*.

(33 P. 2d 940.)

Opinion filed July 7, 1934.

*John W. Davis,* of Dodge City, for the appellant.
*Lester Luther,* of Cimarron, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action on a contractor's bond. The trial court sustained plaintiff's demurrer and a motion to strike several paragraphs of defendant's answer. Defendant has appealed.

Briefly stated, the petition, filed September 23, 1931, alleged that on November 7, 1930, the plaintiff city entered into a written contract with P. S. Judy, doing business as the Air-Made Well Company, by which he agreed to construct and equip wells sufficient in number and size to yield 300,000 gallons of water per day of twenty-four hours and to maintain such production for a year, for which the city agreed to pay $34 per 1,000 gallons, or a total of $10,200; and it was further agreed if the wells did not maintain that supply for the year the city should notify the contractor, who, within five days, should remedy the defect by drilling additional wells, or in some other manner, or pay the city for the shortage at the rate of $34 per 1,000 gallons. These provisions of the contract were guaranteed by the bond sued on. The contract provided that surface water, and any undesirable underground stratum of water, should be cut off by different sized casing sealed with concrete or suitable lead pack. It contained provisions for testing the wells, and other pertinent provisions not necessary to be stated. The petition alleged the wells were constructed, equipped, and paid for in full; that the wells have never furnished 300,000 gallons of water in twenty-four hours since such payment, but have furnished only 216,000 gallons,

which is all that could be secured from them; that the city gave the contractor proper notice of the deficient production, but he had failed and refused to bring the production up to the contract requirements. The city asked judgment for $2,856, being $34 per 1,000 for the alleged shortage of 84,000 gallons below that which the contract required the wells to produce.

On November 23, 1931, defendant filed a motion to dismiss the action as having been prematurely brought, and alleged plaintiff had failed to give the notice required by the contract, but that the contractor was informed the water supply had fallen below the amount named in the contract, and had applied to plaintiff to be permitted to do the work necessary to bring the water supply up to the contracted amount, but that plaintiff had refused to permit him to do so. This motion was overruled October 7, 1932. At some time while it was pending (the specific date is not shown) plaintiff, by its attorney, and defendant, by its attorney (who is not now representing defendant), entered into a stipulation in which it was agreed in substance that the contractor might undertake to develop the wells so as to produce the flow of water mentioned in the contract, and should he do so, "such water to be clear and suitable for use in the mains of the water system of plaintiff," and pay the costs and expenses of the action, that plaintiff would dismiss it. This stipulation appears never to have been acted upon. Later defendant filed an answer, and still later an amended answer. This last instrument contained, *first,* a general denial; *second,* alleged that the wells had been completed, tested and found to produce the required amount of water, were paid for and taken over by the city, and that this was a ratification by the city which released the surety on the bond.; *third,* that if the quantity of water produced by the wells after they were taken over by the city was deficient, such deficiency was not due to any defect of the wells or any fault of the contractor, but was caused by the negligence of plaintiff, its agents and employees while operating the wells—setting out some lack of proper operation which, it is alleged, caused the wells to become congested; *fourth,* that when plaintiff took charge of the wells and commenced to operate them they were perfect in every respect, but owing to shifting of sand strata, caused by plaintiff's improper and unskillful operation, the wells became congested; that the shiftings of the sand strata were acts of nature over which the contractor had no control, and were not guarded against, but were accelerated by plaintiff's im-

proper and negligent operation of the wells; *fifth,* that in accord with subdivision B, of paragraph 7 of the contract, the contractor, on or about October 22, offered and attempted to do development work, which the city refused to permit him to do, and by reason thereof the contractor and his sureties were fully discharged from liability; *sixth,* that the stipulation entered into was not binding on defendant for the reason that it contained provisions not in the contract for making the wells, and the introduction of such new provisions in the stipulation was wholly unauthorized; that the contractor in making the wells did not agree to furnish water of any certain quality, but agreed only as to the quantity.

Plaintiff demurred separately to the second, third, fourth and fifth defenses pleaded by defendant on the ground that they constituted no defense to the cause of action stated in plaintiff's petition, and moved to strike from the answer the sixth paragraph for the reason that it was not an answer or defense to any cause of action set out in the petition, and was surplusage. The trial court sustained the demurrers to the second, fourth and fifth paragraphs of defendant's answer and overruled it as to the third, and also sustained the motion to strike out the sixth paragraph. It is from these specific rulings that defendant appealed.

Taking up these specific questions argued. The second paragraph of the answer alleged that when the wells were completed and tested they yielded more than the quantity of water provided in the contract; that plaintiff took them over and operated them, and that this discharged the liability on the bond. This cannot be true. The contract obviously contemplated that even if the wells furnished sufficient water when completed and tested they might not do so later, and provisions were put in the contract specifically for that purpose. In fact, the bond was given to guarantee the maintenance of the contracted production of water for a year.

In the fourth paragraph of the answer it is alleged that the shiftings of the sand strata were acts of nature over which the contractor had no control. It is argued in appellant's brief that this shifting of sand was an act of God, for which defendant is not liable. But it is argued that it is commonly known that the underlying strata of sand, throughout the region east of the Rocky Mountains, shifts. If so, and the contractor had desired to relieve himself from such a contingency, he should have embodied a clause of that kind in

the contract. By this argument the parties entered into the contract knowing that the strata of sand might shift from natural causes, and notwithstanding this knowledge the contractor and his surety were to be bound if the wells did not produce a definite quantity of water. In this paragraph it is alleged that the shifting of the strata of sand was caused in part by plaintiff's negligence. We think any evidence on that point may be admitted under the third paragraph of the answer.

In both the second and the fourth paragraphs of the answer defendant pleads that when the wells were completed they yielded more than the quantity of water provided in the contract, and it is argued that it is of special importance to defendant that this fact be admitted or established by proof. We deem any controversy over that question sufficiently in issue by the allegations of the petition and the general denial and third paragraph of the answer.

In the fifth paragraph of the answer it is alleged that on or about October 22 (year not stated) the contractor offered to do development work, and the city officials would not permit it to be done. In appellee's brief this date is assumed to be October 22, 1932. Appellant complains very much of that assumption and contends it was October 22, 1931. But even that was about thirty days after the action had been brought and almost at the close of the year after the contract was entered into. The pleadings of both parties are subject to the criticism that definite dates are not alleged. The petition charges that the wells never furnished the contracted amount of water per day "since the date of payment therefor." What date payment was made is not alleged. We were told in oral argument that it was in April, 1931. Neither does plaintiff allege the date when notice provided for by the contract was given the contractor of the failure of the wells to produce the required amount of water. We were told in the oral argument that it was in April or May, 1931. Since it is alleged in the petition filed September 23, 1931, it must have been some time prior to that date, and the contractor, by the terms of his contract, within five days after such notice, should have begun the development work. It is not contended by defendant that he undertook to do so prior to October 22, 1931. Certainly the refusal to permit him to do the work on that date, as alleged in paragraph 5 of the answer, would not fully discharge defendant from liability.

Appellant complains that the court struck out the sixth para-

graph of its answer pertaining to the stipulation entered into by the attorneys in the case. We see no error in that ruling. Obviously the stipulation was made with the view of effecting a settlement of the controversy, and appears not to have been acted upon. Appellant specifically complains of this stipulation in that it went further and required the contractor to do more than his original contract called for, in that it contemplated the production of clear water suitable for use in the city's water mains. That is but little, if any, more than the contract itself required. Obviously it was providing water suitable for the water mains of the city, and it specifically provided for cutting off surface water and "such stratum of underground water as it is not desired to develop." But the real answer to appellant's complaint of the court's ruling on this point is that the stipulation was an effort to settle the litigation, which effort apparently failed. The city is not suing on this stipulation, and there is no purpose in having it pleaded.

We find no error in the ruling of the trial court, and its judgment is affirmed.