## RAY v. PARAMORE et al.

No. 24161. Feb. 5, 1935.

H. W. Sitton, for plaintiff in error.

Wilkinson & Wilkinson, for defendants in error.

PER CURIAM. The parties to this action will be referred to as they appeared in the court below.

This is a proceeding supplemental to an execution to compel the satisfaction of a judgment by garnishment. The plaintiffs filed an affidavit on March 11, 1932, from which it appears that on February 20, 1932, H. R. Paramore and G. E. Henschen secured a judgment for the sum of $500, with interest and attorney's fees, against Will Ray and Earl Russell in their individual capacity and as a copartnership. The affidavit states further:

"This affiant verily believes that Jack Ray is indebted to the defendants, and each of them, or has in his possession, or under his control, personal property belonging to said judgment debtors, or one of them, which said property and indebtedness is not, to the best knowledge and belief of this affiant, by law exempt from seizure or sale upon execution; and that said judgment debtors have no property subject to execution sufficient to satisfy plaintiffs' judgment."

The record elsewhere affirmatively shows that the judgment was obtained, as set forth in the affidavit, and after its rendition an execution was issued in the case and returned by the sheriff with the recital:

"No property, real or personal, found in my county owned by the defendants upon which levy could be made."

Upon the filing of the referred to affidavit an order issued over the hand of the district judge, directed to Jack Ray, requiring him to appear in the district courtroom in Duncan, Okla., at 9 o'clock a. m., March 25, 1932, to make answer under oath concerning the matters set forth and alleged in the garnishment affidavit. This order was served in the manner of the service of a summons upon both the garnishee and the defendants. At the designated time the plaintiffs and the garnishee appeared in person and by counsel. The garnishee filed no answer or other pleading, but, subject to an exception saved to the court's order overruling his objection to the proceedings on the ground that the garnishment affidavit was insufficient "to authorize such proceedings or to warrant a judgment against the garnishee", announced ready for trial. Thereupon the court proceeded with the hearing, the only witness appearing and testifying being Jack Ray, the garnishee, who was introduced on behalf of the plaintiffs, and whose testimony was reduced to writing by the court reporter, transcribed and made a part of the record in the case. The court, having taken the matter under advisement, subsequently, and on April 7, 1932, entered a judgment in favor of the plaintiffs and against the garnishee, Jack Ray, for the amount of the principal judgment theretofore rendered in the cause against the defendants, Ray and Russell, having found and determined from the evidence that garnishee, Jack Ray, was indebted to Will Ray, one of the defendants, in the sum of $1,-000. The court directed that "execution and proper legal process issue." From the order overruling a motion for a new trial, the garnishee, by petition in error, prosecutes this appeal.

While several reasons are urged by the garnishee for a reversal of the judgment of the trial court, they may be summarized and briefly stated in the following form:

First. Did the proceedings, leading up to the trial of the issue joined between the plaintiffs and the garnishee, give the court jurisdiction to determine such issue in the manner pursued and to render such judgment as the facts warranted?

Second. Was the debt, discovered from the evidence, owing by the garnishee to one of the defendants, such a debt that the court could order its application to the plaintiffs' judgment?

The first question must be answered in the affirmative.

The plaintiffs in their initial step proceeded under section 737, C. O. S. 1921 (sec. 497, O. S. 1931), which provides:

"737. After the issuing or return of an execution against property of a judgment debtor, or of any one of several debtors in the same judgment, where it is made to appear by affidavit, or otherwise, to the satisfaction of the judge, that there is reason to believe that any person or corporation has property of such judgment debtor, or is indebted to him, the judge may, by an order, require such person or corporation, or any officer or member thereof, to appear at a specified time and place within the county in which such person or corporation may be served with the order to answer, and answer the same. The judge may also,

in his discretion, require notice of such proceeding to be given to any party in the action, in such manner as may seem to him proper."

The affidavit filed by the plaintiffs was sufficient in form and substance to challenge the attention of the court and to justify the order issued. The correlative sections of the Code, pertinent to this cause, follow:

"738 (sec. 484, O. S. 1931). Witnesses may be required, upon the order of the judge, to appear and testify upon any proceedings under this article, in the same manner as upon the trial of an issue.

"739 (sec. 485, O. S. 1931). The party or witness may be required to attend before the judge, or before a referee appointed by the court or judge. All examinations and answers before a judge or a referee, under this article, must be on oath, and reduced to writing; but when a corporation answers, the answer must be on oath of an officer thereof.

"740 (sec. 498, O. S. 1931). The judge may order any property of the judgment debtor, not exempt by law, in the hands either of himself or any other person or corporation, or due to the judgment debtor, to be applied toward the satisfaction of the judgment, and may enforce the same by proceedings for contempt in case of refusal or disobedience; but the earnings of the debtor for his personal services, at any time within three months next preceding the order, cannot be so applied, when it is made to appear, by the debtor's affidavit or otherwise, that such earnings are necessary for the use of a family supported wholly or partly by his labor."

As before stated, the court's order, addressed to the garnishee, was duly served and at the designated time he appeared. Certainly his action in neglecting or declining to make written answer should not be permitted to prejudice plaintiffs' rights, nor preclude further inquiry into a matter concerning which the jurisdiction of the court had been especially invoked. The testimony was reduced to writing by the official court reporter and became a part of the record. This was in compliance with section 739, supra. The fact that plaintiffs called the garnishee as a witness could furnish no cause for complaint on his part. We are aware of no rule of law which by any stretch of the imagination would render him incompetent. In fact, he was summoned into court, under a special provision of the statutes, to furnish light upon the very subject of inquiry, and, naturally, became the one material witness in the case.

But counsel for the garnishee urges that the court was without jurisdiction to hear any evidence or to take any step in the premises, and as grounds therefor calls to his aid the provisions of law as expressed in section 754, C. O. S. 1921 (sec. 501, O. S. 1931), which provides that interrogatories must be served upon the garnishee by the judgment creditor at the time of the service of the order in garnishment, or within three days thereafter. And attention is directed to the case of First National Bank of Healdton v. Halback, Adm'r, et al., 160 Okla. 82, 15 P. (2d) 586, wherein this court held that where proceedings in garnishment are had under said section 754, and allied statutes, service of interrogatories is jurisdictional. Neither the statutory provision mentioned nor the law announced in the Halback Case applies here.

There has been much confusion concerning the reasons for, and the proper construction to be placed upon, the many statutory provisions relating to the subject of garnishment, and although the modes of procedure in force in this state now were, in the main, adopted bodily from Kansas, where they have been effective almost "since the memory of man runneth not to the contrary", nevertheless, the subject is still a source of prolific and vexatious litigation, and it may rightly be said that such provisions are indeed indefinite and ambiguous. Undoubtedly, under the sections of the statutes hereinbefore set out in full, there is provided a method of procedure whereby a judgment creditor after the issuance of execution and **either before or after its return** may have judicially determined the question as to whether a third person is indebted to the judgment debtor, or has in his possession property belonging to him not exempt by law, which may be applied to the judgment obtained. Under these provisions it is also possible to search out property held by the judgment debtor himself, not exempt by law, and direct its application to the claim of the creditor. When the proper affidavit is made and filed, and the court's order based thereon is entered and served, the court is authorized to determine from parol testimony, as in other triable matters, the question thus presented. Under this form of procedure the service of interrogatories, at the time of service of the garnishment order, could serve no useful purpose.

As was pointed out in the First National Bank of Healdton v. Halback Case, supra,

the plaintiff, in that instance, proceeded under sections 753, 754, and 755 of the Compiled Oklahoma Statutes, 1921 (secs. 500-1-2, O. S. 1931), Section 753 provides in substance that **after an execution has been returned unsatisfied,** the judgment creditor may file with the clerk his affidavit setting forth certain matters, and thereupon the clerk shall issue an orrer requiring the garnishee to answer on or before a day named in the order, not less than ten nor more than 20 days from the date of the issuing the same, all interrogatories that may be propounded by the judgment creditor concerning the alleged indebtedness of the garnishee to the judgment debtor, or concerning such property as the garnishee is alleged to hold for such debtor. The interrogatories referred to are those provided for in the succeeding section of the Code (754), and this section makes it mandatory for a copy of such interrogatories to be served upon the garnishee at the time of the service of the order in garnishment or within three days thereafter. It will thus be seen that the service of the interrogatories becomes a part of the legal machinery whereby the garnishee is brought into court, and until the process is complete there is nothing for him to answer, nor does the court acquire jurisdiction to render judgment against the garnishee.

Therefore, giving life to the several sections of the statutes, and construing each in the light of the other, it seems obvious that the legislative intent was to provide two separate and distinct methods whereby the judgment creditor may reach garnishable property of the judgment debtor when held in the hands of another. This conclusion is borne out by an examination of section 755, which section is directly related to those which require the filing and service of interrogatories. It is:

"All subsequent proceedings against the garnishee shall be the same as in cases of attachment, as far as applicable."

The plaintiffs in the instant case pursued one remedy to the exclusion of the other, and the recorded proceedings are in substantial compliance with law.

It is not amiss to here remark that the extent to which the court may go in its judgment and final orders in garnishment proceedings, like all other matters associated with the subject, seems to have furn'shed a fertile field of debate, and as to whether the court, in a case where that method of procedure employed in the instant case is invoked, is ever authorized to render a personal judgment and direct the issuance of execution, we do not wish to be understood as expressly holding, for, in the light of our ultimate conclusion, the point becomes unnecessary to decide. Suffice to say now that in such a case, where the evidence discloses property not exempt by law, in the hands of the garnishee which is nakedly and admittedly the property of the judgment debtor, the court is authorized to direct its application to the creditor's claim, and in case of willful refusal or disobedience on the part of the garnishee, may enforce such order by proceedings as for contempt. State ex rel. v. Burrows (Kan.) 5 P. 449.

The second point raised: Was there a garnishable debt?

As stated, the only evidence afforded the court came from the garnishee himself. This evidence is indeed meager, and certainly is indefinite in character. When analyzed, however, the gist of it, with the reasonable deductions to be drawn, are as follows: The defendants Will Ray and Earl Russell owned and operated jointly, a dairy business in Stephens county. Russell sold his interest to Ray—possibly to Ray and his son, Jack Ray. Afterwards, Jack Ray acquired the whole business by assuming the outstanding indebtedness and agreeing to pay his father $1,000 along as he "saw fit and could pay him." and as he "could make it out of the dairy", and after all the obligations of the business were "taken care of." There was owing and unpaid of the assumed obligations, at the time of the hearing, at least $1,700, or, as the witness expressed it, "plenty." The evidence nowhere discloses that these obligations had been in any wise reduced since Jack Ray had acquired the business or that the likelihood existed of their ever being paid.

This court has held in the case of Jacobs v. Colcord, 136 Okla. 158, 275 P. 649:

"A garnishment proceeding is no more than a substitution of the plaintiff for the defendant debtor in the enforcement of any liability against the garnishee, and therefore the plaintiff can acquire no greater rights against the garnishee than the debtor himself possessed or could enforce."

In the body of the opinion the court cited, with approval, the case of West Florida Grocery Co. v. Teutonia Fire Insurance Co., 74 Fla. 220, 77 So. 209, L. R. A. 1918B, 698, in which it is held:

"Before a writ of garnishment can be effective, there must be an 'indebtedness due', at the time of the service of the writ, or at the time he makes his answer, or at any time between such periods, or which may become due absolutely by the lapse of time only. This excludes an indebtedness that may never become due according to circumstances yet to occur, or which is not determinable by a fixed and certain method of calculation. If there is anything contingent or to be done by a person before the liability of another becomes fixed, there is not such an 'indebtedness due' as contemplated by the statute to which a writ of garnishment can apply."

And in the case of Helms et al. v. State ex rel. Mifflin, 137 Okla. 55. 280 P. 416, basing the pronouncement of law upon the numerous texts and cases therein cited, this court has said:

"A debt to be garnishable need not be due and payable at the time the garnishment summons is served, but it must be owing absolutely and beyond contingency at the time the garnishment summons is served."

After all, the exact nature of an arrested or garnished debt may best be determined by the question:

"Could the defendants have maintained an action against the garnishee at the time the garnishment summons was served, to recover the debt or liability sought to be garnished, except for the mere fact that the time for the payment of the debt might have been fixed at a subsequent date?"

It is apparent that, in this case, the query must be answered in the negative. Not only is the debt in question not owing absolutely and beyond contingency, but, from the evidence, we are impelled to the conclusion that it may never become payable. It therefore follows that the learned trial judge erred in rendering judgment in favor of the plaintiffs and against the garnishee.

The judgment of the trial court is reversed and the cause is remanded for such further proceedings as may be authorized by law.

The Supreme Court acknowledges the aid of Attorneys J. J. Smith, Frank W. Nesbitt, and N. C. Barry in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Smith and approved by Mr. Nesbitt and Mr. Barry, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BAYLESS, PHELPS, and GIBSON, JJ., concur.