WOODS v. AMULCO PRODUCTS, Inc., et al.

WOODS v. ANCHOR STONE & MATERIALS CO. et al.

No. 33896.   June 26, 1951.

Rehearing Denied July 17, 1951.

*235 P. 2d 273.*

C. A. Ambrister and Kelly Brown, Muskogee, for plaintiff in error.

Edwin Langley, Muskogee, for defendant in error, O. M. Drake, d/b/a Drake Construction Company.

Garrett & Garrett and Chas. A. Moon, Muskogee, (Kay Wilson, Jr., Muskogee, on brief), for defendants in error, Amulco Products, Inc., and Anchor Stone & Materials Company.

LUTTRELL, V.C.J. Plaintiffs, Amulco Products, Inc. and Anchor Stone & Materials Company brought separate actions against O. M. Drake, d/b/a Drake Construction Company, to recover balances due them for materials furnished defendant in connection with the paving of Crestwood Addition to the city of Muskogee. In each action garnishment summons issued to and was served upon N. D. Woods, owner of the addition. Woods answered admitting an indebtedness to Drake in the sum of $3,640.38, subject to assignments of a portion of the balance due made by Drake and accepted by him. The plaintiffs in each case took issue with the answers filed by the garnishee. The cases were tried to the court, and at the conclusion of all the evidence the court found that Woods was indebted to Drake in the sum of $7,119.11; decreed payment to the garnishees of the amounts owing them and, upon motion of the defendant Drake, who, although he had filed no pleading, appeared in person and by attorney, rendered judgment for the balance in favor of Drake. The cases were consolidated for trial and, garnishee appealing to this court, were briefed as consolidated cases here.

In the lower court and in this court the contention between the parties was and is whether the garnishee was liable for repairs made to the pavement by Drake, or whether such repairs were included in and a part of the work contemplated or required by the contract between the parties; in other words, whether such repairs were work under the contract or extra work.

From the record it appears that Woods was the owner of the addition, and that on March 20, 1946, he entered into an agreement with Drake for the paving of a portion of the streets in the addition, the other streets having been already paved. The contract provided that Woods should prepare the roadbed or subgrade for the pavement,

and that the pavement should consist of a crushed sandstone base four inches thick, upon which a premixed asphaltic surface three-fourths of an inch thick should be laid. It provided with particularity of what the base should consist, and also provided for the laying or erecting of gutters and curbs in connection with the pavement. It further provided that 90 per cent of the agreed contract price should be paid upon approval of the work by garnishee's engineer, and according to estimates made by him at the end of each fifteen day period, and that the balance should be paid 30 days after the completion of the work and acceptance of the same by the city engineer of the city of Muskogee. This requirement was waived by Woods at the trial. Before the paving was commenced the thickness of the base, by agreement of the parties, was increased from four inches to five inches. It appears that from the outset or beginning of the work difficulty was encountered in obtaining suitable materials for the base. Originally, the parties had anticipated obtaining base material from a quarry near Muskogee, but found that the material could not be obtained in sufficient quantities from that source, and, by agreement of the parties, material was procured from Tulsa, crushed limestone being substituted for crushed sandstone. As time progressed it became increasingly difficult, because of lack of transportation, to obtain this material in suitable quantities when needed, and by further agreement of the parties, and with the approval of the city engineer of Muskogee, gravel which could be obtained at a point near Muskogee was substituted for the crushed limestone. It further appears that delays were caused by heavy rains, and also by the fact that Drake, upon several occasions, took his equipment, or a part thereof, away from the paving project to use it on some other job.

While the contract called for Drake to complete the project within 60 days after work was commenced, it provided no penalty for failure to do so, and Drake was unable to complete the paving within that period of time due to the factors above mentioned. The engineer of the garnishee testified that 90 per cent of the paving had been laid by early September, 1946, and Drake testified that the work was completed in December, 1946. On October 4, 1946, the work was sufficiently near completion that the city engineer was requested to inspect the pavement and approve the same if he found it satisfactory. He testified, and in his written report appearing in the record it appears, that some portions of the pavement were unsatisfactory, and he refused to approve it. It further appears that prior to the date of the inspection by the city engineer cracks had developed in portions of the paving, and other portions were badly checked. Apparently, these portions were not repaired by Drake, although he did some additional work in 1946, and, at a meeting held by the parties in March, 1947, it was agreed that Drake should proceed with the work of repairing the defective portions of the pavement, and that the garnishee would advance to him the sum of $3,000, and such additional sums as were necessary to meet his payroll. He thereupon proceeded to effect the repairs, which, due to various delays encountered, were not completed until December, 1947, at which time he submitted a bill for the amount expended by him for such repairs, which Woods refused to pay.

The evidence as to the cause of the cracking and checking of the pavement is conflicting, defendant Drake and his witnesses testifying that it was due to the subgrade, the work of preparing which was done by garnishee, and which defendant and other witnesses testified was of a character that retained moisture which affected injuriously the base laid upon it; to insufficient drainage, and to the operation of heavy trucks and transit concrete mixers carrying heavy loads over the pavement, which was not adapted to heavy

traffic, but was suitable for ordinary residential traffic only.

The witnesses for garnishee testified that the condition of the pavement was due to water intrusion, but that that was caused, not by the condition of the subgrade, or by insufficient drainage, but by the failure of defendant to proceed promptly with the work, and to his leaving the work at various times in such condition as to permit rain water to seep under the pavement and do the damage which was done. But the testimony of the city engineer, who was a witness for the garnishee, indicates that the drainage, especially in the west and south portion of the addition, was insufficient to carry off the water after heavy rains, and that some of the pavement was covered with silt and sand to such an extent that he was unable to inspect it properly. The defendant testified that he laid the pavement in exact compliance with the requirements of the contract, except in two intersections, which he repaired at his own expense, and no witness testified to the contrary. Apparently, the question of who was to pay for the repairs was never discussed by the parties prior to the time Drake submitted his bill therefor.

The garnishee contends, as we understand it, that the contract was not completed until the city engineer approved the paving, and that necessarily all repairs made were not extra work, but were a part of the contract work, and that the pleadings raised no issues except the amount due under the contract. He says that under the decision in Oklahoma City v. Derr, 109 Okla. 192, 235 P. 218, the contractor must bear the unexpected expense arising from unforeseen difficulties incident to the performance of the work, and that he will not be relieved from performance of the contract because he meets a situation incidental to performance that was not anticipated by him. He also calls attention to First National Bank v. City of Seattle, 71 Wash. 122, 127 P. 837, and City of Cimarron v. Independence Indemnity Co., 140 Kan. 9, 33 P. 2d 940. He argues that under these decisions, and especially Oklahoma City v. Derr, supra, the fact that the subsoil was not of the character anticipated or expected by the contractor does not relieve him of the obligation to completely perform the contract.

Drake, on the other hand, contends that as the contract specifically provided that he was to lay the paving on a subgrade prepared by the garnishee, and that the paving was to be composed of certain specified materials, his contractual obligation ended when he laid the pavement in the manner required by the contract, and composed of the materials therein specified, and that damage to the pavement because of any defect in the subgrade prepared by the garnishee, or by lack of proper drainage, was damage for which he was not responsible. He calls attention to the statement in Oklahoma City v. Derr, supra, as follows:

"A different rule applies where the contractor must build and complete a structure according to the plans and specifications by the owner. The contractor will not be required to bear extra expense resulting from the performance of the contract on account of defects in the plans and specifications prepared and submitted by the owner." (Citing numerous authorities.)

He also calls attention to State v. Commercial Insurance Co., 125 Neb. 43, 248 N.W. 807, 88 A.L.R. 790, and to the A.L.R. annotation to that case shown at 88 A.L.R. p. 797, wherein the general rule is stated as follows:

" . . . the rule has become well settled, in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans and-or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results—at least after the work is completed — solely from the defective or insufficient plans or specifications, in the absence of any negligence on the contractor's part, or any express warranty by him

as to their being sufficient or free from defects."

The rule as announced above is supported by numerous citations, including Oklahoma City v. Derr, supra.

Careful consideration of the entire record convinces us that the rule contended for by defendant, as stated in the A.L.R. annotation above set forth, is the applicable rule in this case. The contract contained no guarantee or warranty of the stability of the work when finished, and from the evidence the terms of the contract were carried out by defendant, and the paving was laid by him in accordance with its provisions. Therefore, under the rule above announced, defects which developed in the paving due to imperfect plans or specifications, which failed to provide for sufficient drainage, or to an inadequate base or subgrade, would not subject him to liability to repair the same at his own expense.

Garnishee attempts to predicate an admission of liability by Drake upon the terms of certain assignments of funds due and owing under the contract to plaintiffs, dated April 3, 1947, which assignments were "out of the contract price remaining due and unpaid under said contract," and further authorized the garnishee to pay certain funds to the plaintiffs, when the contract was completed and approved by the city engineer of Muskogee, out of the balance due Drake. It also calls attention to a letter written by Drake to the city engineer for permission to delay or suspend operations on the work until the weather was suitable for satisfactory work to be performed, and which letter contained the following statement:

"The Owner and the Contractor agree that the streets be kept in an easily usable condition during the period and that if flaws develop that may obstruct traffic, they will be immediately corrected by the Contractor at his expense and as directed by the City Engineer."

In our opinion, neither of these instruments constitutes an admission of liability on the part of Drake to effect at his own expense all such repairs as might be necessary to secure the approval of the city engineer. The assignments to plaintiffs were prepared and delivered to them in order to discourage them from taking legal steps to collect the sums due them, and at a time when little, if any, repair work had been done. The letter to the city engineer was not an agreement by the contractor to correct any or all flaws that developed in the pavement, but only to sufficiently correct flaws that developed so that traffic on the streets would not be obstructed. So far as the record shows, no such flaws developed. Furthermore, there had been no discussion between the parties at the time the assignments were executed or the letter written as to who was responsible for the repairs, and whether they should be made by the contractor at his own expense or paid for by garnishee.

Evidently, the trial court in rendering judgment adopted and followed the rule announced in 88 A.L.R., as set forth above, and careful consideration of the somewhat voluminous record convinces us that the application of the rule under the facts in this case was not erroneous, and that the judgment of the trial court is sufficiently sustained by the evidence.

Garnishee also contends that the trial court was without power and jurisdiction to render judgment in favor of the defendant Drake against the garnishee for the balance of the amount found due and owing by the court from garnishee to him, after deducting the amounts assigned by defendant and the amounts of the judgments rendered against the garnishee in favor of the plaintiffs. This judgment for defendant was rendered upon the oral motion of defendant at the close of the case. Garnishee points out that no pleading was filed by the defendant against him, and says that there was no issue in the case as between him and defendant.

While no written pleading was filed, we think the issue in the case was the amount due and owing from the garnishee to defendant, and whether defendant was entitled to the money expended for repairs in addition to the balance due under the contract. This issue was actively litigated by the garnishee on the one hand, and by the defendant and the plaintiffs on the other hand. It was in fact the only issue in the case.

The cases cited by garnishee in support of his contention, Mull v. Jones, 33 Kan. 112, 5 P. 388; Brooks v. Fields, 25 Okla. 427, 106 P. 828; Williamson v. Oklahoma National Bank, 7 Okla. 621, 56 P. 1064, and Ray v. Paramore, 170 Okla. 495, 41 P. 2d 73, have very little, if any, bearing upon the question presented, which seems to be a question never before considered by this court.

Our statute, 12 O.S. 1941 §1181, provides that the defendant may participate in the trial of any issue between the plaintiff and garnishee for the protection of his interest. Section 1182 provides that the proceedings against the garnishee shall be deemed an action by plaintiff against garnishee and defendant as parties defendant; provides that the court shall render such judgment in all cases as shall be just to all the parties and properly protect their respective interests; and further:

" . . . may adjudge the recovery of any indebtedness, the conveyance, transfer, or delivery to the sheriff, or any officer appointed by the judgment, of any real estate or personal property disclosed or found to be liable to be applied to the plaintiff's demand, or by the judgment pass the title thereto; and may therein, or by its order when proper, direct the manner of making sale and of disposing of the proceeds thereof, or of any money or other things paid over or delivered to the clerk or officer. The judgment against a garnishee shall acquit and discharge from all demands by the defendant or his representatives for all moneys, goods, effects, or credits paid, delivered or accounted for by the garnishee by force of such judgment; . . ."

In Berry-Beall Dry Goods Co. v. Adams, 87 Okla. 291, 211 P. 79, we held that a garnishment was in effect an attachment of all goods, chattels, claims, and effects belonging to or owing to the defendant, and held by some third person; that service of garnishment summons upon such third person as garnishee brought the property or money held by him and belonging to or owing to defendant into the custody of the court as though the officers had taken actual possession of it, and that the property remained in the hands of the garnishee as trustee subject to whatever right or interest he might have therein.

In Ohio Casualty Insurance Co. v. Gordon (C.C.A. 10), 95 F. 2d 605, the Circuit Court of Appeals held that an adjudication in a garnishment proceeding of the liability of an insurance company to the insured defendant was res judicata both as to the defendant and insurance company in any subsequent proceeding. It called attention to the fact that while the insured did not file any pleading in the garnishment proceeding, and was formally a party defendant in that proceeding, nevertheless, under the statute (1181, supra) he might participate in any issue between the garnishee and the insurance company in order to establish the liability of the insurance company under the policy, and that in such case it was the duty of the court to render such judgment as would properly protect the interests of the defendant. It held that while ordinarily a judgment against several defendants is not conclusive as between themselves in respect to their rights and liabilities inter se, such matters could be adjudicated conclusively where in such proceeding they were in fact adversaries and the issue was litigated.

In the instant case, defendant and the garnishee were adversaries, and every claim of defendant, and every defense thereto by the garnishee, were actively and vigorously litigated, and it is fair to assume that the garnishee produced all the evidence within his

power to defeat the claim of defendant that he was entitled to extra compensation for repairing the pavement. Since the money was in custodia legis, and while not actually paid into court was held by the garnishee as trustee, and since the determination by the court of the garnishee's liability to the defendant in such adverse proceeding was res judicata in any subsequent case between the parties, we think the trial court had power and jurisdiction to render the judgment for defendant, and that it would be unreasonable and unnecessary to require the defendant to bring another action for the amount remaining in the hands of the garnishee after the payment of the other claims, and relitigate the same issue as that litigated by him in the instant case, for the same amount of money which the judgment of the trial court in the instant case conclusively established was due and owing to him from the garnishee. The money being in the custody of the court, the court, we think, under the provisions of 12 O.S. 1941 §1182, rendered such judgment as would be just to all the parties and properly protect their respective interests, and certainly the judgment in favor of defendant in the instant case is within the purview of the statute.

The rule announced above would not, of course, be of universal application, but would apply only to those cases where the issue of the amount due and owing from the garnishee to the defendant had been actively litigated between the garnishee and defendant, and determined by the court after the parties had produced all their evidence.

Judgment affirmed.

ARNOLD, C.J., and WELCH, CORN, GIBSON, and DAVISON, JJ., concur. O'NEAL, J., dissents.