Roger MILLER, d/b/a R. Miller & Sons Company, Appellee,

v.

GUY H. JAMES CONSTRUCTION COMPANY, a corporation, and Santa Fe Land Improvement Company, a corporation, Appellants,

v.

FEDERAL INSURANCE COMPANY, a New Jersey corporation, Appellant.

No. 53856.

Court of Appeals of Oklahoma, Division No. 2.

July 6, 1982.

Rehearing Denied Sept. 2, 1982.

Certiorari Denied Oct. 26, 1982.

Released for Publication by Order of Court of Appeals Oct. 29, 1982.

S. Paul Hammons' Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc., Oklahoma City, for appellee.

Karen L. Howick, D. Stuart Basham, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellants Guy H. James Const. Co. and Federal Ins. Co.

Hugh D. Rice, Rainey, Ross, Rice & Binns, Oklahoma City, for appellant Santa Fe Land Improvement Co.

BOYDSTON, Presiding Judge.

Plaintiff Roger Miller, d/b/a R. Miller & Sons Co., (Subcontractor) sued to recover the cost of repair work to a concrete channel liner that washed out twice while it was being constructed for Guy H. James Construction Co. (Prime Contractor) and Santa Fe Land Improvement Co. (Owner). Subcontractor also sued to enforce a lien against the property of Santa Fe. The case was tried to the court and resulted in a $37,231.87 judgment, attorney fees, interest, and costs in favor of Subcontractor. In addition, foreclosure of the lien was ordered.

Owner, Prime Contractor, and its bond company, Federal Insurance Company, appeal and allege the judgment is contrary to law and is not supported by the evidence. We reviewed the record and found it supported by law and competent evidence. We affirm.

Prime Contractor and Owner contracted for the construction of a concrete lined surface water drainage ditch on a 300 acre industrial site. Prime Contractor subcontracted the grading and dirt work to Sewell Brothers, Inc. (Sewell). The subcontract for construction of the concrete ditch liner went to Subcontractor.

The construction plans, including engineering and specifications for the dirt and grade work, were contracted by Owner to Cobb Engineering Company and were furnished to Prime Contractor. The engineering plans were defective according to the evidence presented at trial.

After Subcontractor had partially completed the ditch liner, runoff from a heavy rainstorm washed it out. The liner was repaired and 97 percent completed by Subcontractor when another rainstorm washed it out. Again Subcontractor reconstructed the damaged ditch. Reasonableness of the repair cost is not disputed, and the contract between Prime Contractor and Subcontractor is silent as to which of the parties should bear the risk of such a loss.

Subcontractor filed suit after Prime Contractor and Owner refused to reimburse him for the repair work. The suit against Prime Contractor alleged the plans were defective. Suit against Owner was to foreclose a materialman's lien against the property.

Prime Contractor then filed an "action over" against Owner alleging that should the court enter judgment in favor of Subcontractor, Prime Contractor should be entitled to judgment against Owner because the wash-outs of the liner were caused by defective plans and specifications furnished by Owner. Prime Contractor also filed a third party action against Sewell asserting the "hold harmless" clause in its contract with Sewell and alleging Sewell had compacted the dirt and graded the area negligently thus contributing to the damage. Sewell, however, was never properly served.

The court, after five days of testimony, rendered judgment in favor of Subcontractor against Prime Contractor, Owner, and Federal Insurance Company on the repair cost and the lien and denied Prime Contractor's right to recover against Owner. The trial court made general findings because no request was made for special findings of fact and conclusions of law. Prime Contractor, Owner, and Federal Insurance appeal. Prime Contractor does not appeal the court's ruling that Owner need not reimburse it for the repair cost.

The sole issue presented on appeal is whether the evidence is sufficient to support the judgment and whether the judgment is contrary to law. Stated another way: who must bear the loss from destruction of or damage to the project during performance of a building contract?

## I

■ We are required to affirm the judgment of the court sitting in matters of law without a jury if its judgment is supported by competent evidence and is not contrary to law. *Pracht v. Oklahoma St. Bank,* Okl., 592 P.2d 976 (1979). Moreover, the judgment must stand if it is warranted under any proper legal theory. *Diem v. Diem,* Okl., 372 P.2d 19 (1962).

■ The evidence is almost undisputed that: (1) the plans were defective; (2) they were furnished by Owner's engineer; (3) they were a part of Subcontractor's contractual obligation; and (4) Subcontractor fully complied with the terms of the contract.

Experts testified there are two ways to design a surface water drainage system. The first, not employed here, is called "point loading" design. This system deliberately channels water to "load" into the concrete ditch at one or more single points of entry. The other system is called "sheet loading," the system applicable to this case. This system is designed to cause water to

flow into a channel evenly across the entire length of the ditch in a "sheet." To prevent "point loading" and erosion of the silty loam soil involved here, an expert testified the slope grade should have been such as to allow water to travel no more than two feet per second. The existing slope grade of 1–2 percent (1–2 feet per 100 feet) allowed an excessive water velocity of 6–7 feet per second; consequently, the surface water quickly eroded the soil near unintended single entry points and washed out the ditch liner.

There is evidence from which the court could conclude the plans were defective in two ways: (1) they permitted "point loading" instead of "sheet loading"; and (2) the steep grade permitted the water to flow at an excessive velocity. Consequently, the combination of erosion and unintended "point loading" quickly undermined the concrete liner, causing it to "float out" and be damaged.

Some evidence indicates Sewell's equipment and work was substandard; however, Sewell was not a party to the suit, and this issue was not seriously contested. For the record, it appears the work done by Sewell contributed to the extent of damage, but not to the fact.

Based on these facts there is ample evidence from which the court could properly find Subcontractor free from negligence and the major contributing cause of the damage to be the defective plans.

## II

Prime Contractor argues the judgment is contrary to law for several reasons. First, Prime Contractor claims no responsibility for the torts of his independent contractor, Sewell, under *Oklahoma City v. Caple*, 187 Okl. 600, 105 P.2d 209 (1940). This argument fails because Subcontractor did not allege or rely on proof of either the negligence of Prime Contractor or Sewell. He did prove his work was performed according to faulty plans and specifications furnished by Prime Contractor and that he should not have to bear the loss caused by their deficiency. The issue of Sewell's negligence was first seriously raised specifically by Prime Contractor in his third party action. The proof of Sewell's negligence that seeped into the record was peripheral at best, compared to the proof directed toward the defective design.

■ Rather, the thrust of Subcontractor's action sounds in contract. Absent open and obvious design defects which should be apparent to a prudent contractor and called to a prime contractor's attention, the party who furnishes plans and specifications impliedly warrants them to be fit for their intended use. Both parties cite *Woods v. Amulco Products*, 205 Okl. 34, 235 P.2d 273 (1951), in which the Oklahoma Supreme Court held:

A construction contractor who has followed plans and specifications furnished by the owner, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the owner for loss or damage which results solely from the defective or insufficient plans or specifications, in the absence of any negligence on the contractor's part, or of any express warranty by him as to such plans ... being sufficient or free from defects.

Prime Contractor construes this to be in his favor because the *Woods* court uses language which seemingly insulates him from liability for the faulty plans. He argues *Woods* negates liability because Prime Contractor did not expressly warrant the plans and because "A construction contractor [Prime Contractor] who has followed plans ... furnished by the owner ... will not be responsible ...." We decline to give the language such a narrow, literal interpretation.

■ We construe the underlying rationale of *Woods* to shift the risk of loss from the least culpable party back up the contract chain to either the party who created the defective plans or the first party in the chain who contractually agreed to assume the risk. *See* 6 A.L.R.3d 1394 (1966); 13 Am.Jur.2d *Building and Construction Contracts* §§ 64–71 (1964).

Under ideal conditions, the party responsible for the defective plans should ultimately have to bear the damages. In this case Prime Contractor implicitly recognized this principle when he countersued Owner on these very grounds. Trial court did not grant judgment over against Owner although under proper proof it could have. The briefs indicate Owner defended the cross-petition on the grounds that Prime Contractor contracted to assume responsibility for the plans, which, if true, diminishes the possibility of an inequitable result as claimed by Prime Contractor.

In any event, Prime Contractor apparently made his "legal peace" with Owner. We can only speculate on this point because Prime Contractor did not appeal that part of the judgment.

### III

Owner appeals alleging the judgment of foreclosure is improper because he paid Prime Contractor for the work and should not have to pay twice. He also argues the action resulted from negligence of Sewell who graded the slope and of Prime Contractor who failed to properly supervise this activity. There was some evidence of this type, but the overwhelming proof on which the court could base this judgment goes to the defective plans and specifications. For the same reasons stated above, we find the trial court did not err in granting the judgment of foreclosure.

Federal Insurance's rights and consequently its appeal are dependent on or derived from those of Prime Contractor and Owner. Therefore, it raises no issues distinct from those of its principals.

Judgment of the trial court affirmed. Costs taxed against and prorated among the appellants. We adjudge Subcontractor is entitled to additional attorney fees for this appeal in accordance with the rule set forth in *Professional Constr. Consultants, Inc. v. State ex rel. Grimes, Ins. Comm'r,* 646 P.2d 1262 (1982), and the cases cited therein.

BACON and BRIGHTMIRE, JJ., concur.